**THE PROPOSED DISCLOSURE STATEMENT HAS NOT BEEN APPROVED UNDER SECTION 1125(b) OF THE BANKRUPTCY CODE BY THE BANKRUPTCY COURT AS CONTAINING ADEQUATE INFORMATION FOR USE IN CONNECTION WITH THE SOLICITATION OF ACCEPTANCES OR REJECTIONS OF THE PLAN OF REORGANIZATION DESCRIBED HEREIN. ACCORDINGLY, THE FILING AND DISSEMINATION OF THIS PROPOSED DISCLOSURE STATEMENT ARE NOT INTENDED AND SHOULD NOT IN ANY WAY BE CONSIDERED AS A SOLICITATION OF VOTES ON THE PLAN, NOR SHOULD THE INFORMATION CONTAINED HEREIN BE RELIED UPON FOR ANY PURPOSE BEFORE A CONDITIONAL DETERMINATION BY THE BANKRUPTCY COURT THAT THE PROPOSED DISCLOSURE STATEMENT CONTAINS ADEQUATE INFORMATION.**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | Case No. 20-10182-tmd |
| WC 2101 W BEN WHITE, LP | § | |
| | § | Chapter 11 |
| Debtor. | § | |

**DEBTOR'S DISCLOSURE STATEMENT FOR**
**DEBTOR'S PLAN OF REORGANIZATION**

DATED: May 4, 2020.

**FISHMAN JACKSON RONQUILLO PLLC**

  /s/ Mark H. Ralston
Mark H. Ralston
State Bar No. 16489460
Fishman Jackson Ronquillo PLLC
Three Galleria Tower
13155 Noel Road, Suite 700
Dallas, TX 75240
Telephone: (972) 419-5544
Facsimile: (972) 4419-5500
E-mail: mralston@fjrpllc.com

COUNSEL FOR DEBTOR WC 2101 W
BEN WHITE, LP

5528464.1

## TABLE OF CONTENTS

**ARTICLE I. INTRODUCTION** .................................................................................. 1
    1.1   Filing of the Debtor's Chapter 11 Case ........................................... 2
    1.2   Purpose of Disclosure Statement .................................................... 2
    1.3   Plan Balloting and Confirmation Procedures ................................. 4

**ARTICLE II. DEBTOR'S BACKGROUND AND FINANCIAL PICTURE** ......................... 5
    2.1   History of Debtor and Causes of Bankruptcy Filing ...................... 5

**ARTICLE III. PROCEEDINGS AND EVENTS IN THE CHAPTER 11 CASE** ................. 6
    3.1   Commencement and Administration of the Case ............................ 6

**ARTICLE IV. SELECTED FINANCIAL INFORMATION,  PROJECTIONS AND VALUATION ANALYSIS** ........................................................................................ 8
    4.1   General ............................................................................................ 8
    4.2   Valuation and Description of Debtor's Assets ................................ 8

**ARTICLE V. SUMMARY OF THE DEBTOR'S PLAN** ................................................ 8
    5.1   Explanation of Chapter 11 .............................................................. 8
    5.2   Terms of the Plan Control ............................................................... 9
    5.3   Claims ............................................................................................. 9
    5.4   Classification and Treatment ........................................................ 10
    5.5   Discharge of Claims ...................................................................... 12
    5.6   Plan Exculpation ........................................................................... 13

**ARTICLE VI. IMPLEMENTATION OF PLAN** ....................................................... 13
    6.1   Summary of Implementation of the Plan ..................................... 13
    6.2   The Reorganized Debtor's Obligations Under the Plan ............... 14
    6.3   Exemption from Transfer Taxes ................................................... 14
    6.4   Claims Objections ........................................................................ 14
    6.5   Contingent Claims ........................................................................ 15
    6.6   Distributions on Allowance or Disallowance of Disputed ........... 15
    6.7   Undeliverable/Returned Distributions ......................................... 15
    6.8   De Minimis Distributions ............................................................. 15
    6.9   Additional Charges ....................................................................... 16
    6.10  Treatment of Executory Contracts and Unexpired Leases ........... 16
    6.11  Pending Claims and Causes of Action ......................................... 17

**ARTICLE VII. CONFIRMATION OF THE PLAN** .................................................. 19
    7.1   Feasibility ..................................................................................... 19
    7.2   Best Interests Test ......................................................................... 19

**ARTICLE VIII. ALTERNATIVES TO THE PLAN** ................................................. 19
    8.1   General ......................................................................................... 19

5528464.1

8.2    Alternative Plans ............................................................................................... 20
8.3    Liquidation Under Chapter 7 or Dismissal .................................................... 20

**ARTICLE IX. RISK FACTORS** ............................................................................... **20**
9.1    Bankruptcy Risks ............................................................................................. 20
9.2    Plan Risks ......................................................................................................... 21
9.3    Business Risks .................................................................................................. 21

**ARTICLE X. CERTAIN FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN**
......................................................................................................................... **22**
10.1   Income Tax Consequences ............................................................................. 22

**ARTICLE XI. JURISDICTION OF THE COURT** ................................................... **22**
11.1   General Retention of Jurisdiction .................................................................. 22
11.2   Specific Purposes ............................................................................................ 23

**ARTICLE XII. MISCELLANEOUS** ......................................................................... **25**
12.1   Amendment or Modification of the Plan ....................................................... 25
12.2   Effective Date and Final Decree .................................................................... 25

5528464.1

<u>**IMPORTANT NOTICE**</u>

**THIS DISCLOSURE STATEMENT HAS NOT BEEN APPROVED OR DISAPPROVED BY THE SECURITIES AND EXCHANGE COMMISSION, NOR HAS THE SECURITIES AND EXCHANGE COMMISSION DETERMINED THE ACCURACY OR ADEQUACY OF THE STATEMENTS CONTAINED HEREIN.**

**THIS DISCLOSURE STATEMENT INCLUDES FORWARD-LOOKING STATEMENTS BASED LARGELY ON THE CURRENT EXPECTATIONS OF THE DEBTOR AND PROJECTIONS ABOUT FUTURE EVENTS AND FINANCIAL TRENDS AFFECTING THE FINANCIAL CONDITION OF THE DEBTOR OR THE REORGANIZED DEBTOR'S BUSINESS. THE WORDS "BELIEVE," "MAY," "WILL," "ESTIMATE," "CONTINUE," "ANTICIPATE," "INTEND," "EXPECT" AND SIMILAR EXPRESSIONS IDENTIFY THESE FORWARD-LOOKING STATEMENTS. THESE FORWARD-LOOKING STATEMENTS ARE SUBJECT TO A NUMBER OF RISKS, UNCERTAINTIES AND ASSUMPTIONS, INCLUDING THOSE DESCRIBED BELOW UNDER THE CAPTION "RISK FACTORS." IN LIGHT OF THESE RISKS AND UNCERTAINTIES, THE FORWARD-LOOKING EVENTS AND CIRCUMSTANCES DISCUSSED IN THIS DISCLOSURE STATEMENT MAY NOT OCCUR AND ACTUAL RESULTS COULD DIFFER MATERIALLY FROM THOSE ANTICIPATED IN THE FORWARD-LOOKING STATEMENTS. NEITHER THE DEBTOR NOR THE REORGANIZED DEBTOR UNDERTAKE ANY OBLIGATIONS TO UPDATE OR REVISE ANY FORWARD-LOOKING STATEMENTS, WHETHER AS A RESULT OF NEW INFORMATION, FUTURE EVENTS OR OTHERWISE.**

**NO REPRESENTATIONS OR OTHER STATEMENTS CONCERNING THE DEBTOR (PARTICULARLY AS TO ITS FUTURE BUSINESS OPERATIONS OR THE VALUE OF ITS ASSETS) ARE AUTHORIZED BY THE DEBTOR, OTHER THAN THOSE EXPRESSLY SET FORTH IN THIS DISCLOSURE STATEMENT. ANY REPRESENTATIONS OR INDUCEMENTS MADE TO SECURE YOUR ACCEPTANCE, OTHER THAN AS SET FORTH IN THIS STATEMENT, SHOULD NOT BE RELIED UPON BY YOU IN ARRIVING AT YOUR DECISIONS. ANY SUCH ADDITIONAL REPRESENTATIONS AND INDUCEMENTS SHOULD BE REPORTED TO COUNSEL FOR THE DEBTOR, WHO SHALL DELIVER SUCH INFORMATION TO THE BANKRUPTCY COURT, WHICH MAY TAKE SUCH ACTION AS IT DEEMS APPROPRIATE.**

**THE INFORMATION CONTAINED HEREIN HAS NOT BEEN INDEPENDENTLY AUDITED, EXCEPT AS SPECIFICALLY REFERENCED HEREIN. THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT HAS BEEN SUBMITTED BY THE DEBTOR AND ITS INTERNAL ACCOUNTING STAFF, UNLESS SPECIFICALLY STATED TO BE FROM OTHER SOURCES. THE DEBTOR'S PLAN IS AN INTEGRAL PART OF THIS DISCLOSURE STATEMENT, AND EACH CREDITOR IS URGED TO REVIEW THE PLAN IN ITS ENTIRETY PRIOR TO VOTING ON IT.**

THE DEBTOR MAKES NO REPRESENTATIONS WITH RESPECT TO THE EFFECTS OF TAXATION (STATE OR FEDERAL) ON THE INTEREST HOLDERS OR CREDITORS WITH RESPECT TO THE TREATMENT OF THEIR CLAIMS OR INTERESTS UNDER THE PLAN, AND NO SUCH REPRESENTATIONS ARE AUTHORIZED BY THE DEBTOR. CREDITORS AND INTEREST HOLDERS ARE ENCOURAGED TO SEEK THE ADVICE OF THEIR OWN PROFESSIONAL ADVISORS IF THEY HAVE ANY SUCH QUESTIONS.

IN RELIANCE ON THE EXEMPTION FROM REGISTRATION PURSUANT TO SECTION 1145 OF THE BANKRUPTCY CODE, ANY SECURITIES OFFERED AND ISSUED PURSUANT TO THE PLAN, IF CONSUMMATED, HAVE NOT BEEN REGISTERED WITH THE SECURITIES EXCHANGE COMMISSION (THE "SEC") UNDER THE SECURITIES ACT OF 1933, AS AMENDED, OR UNDER ANY STATE SECURITIES ACT OR SIMILAR STATE LAWS, NOR HAVE THE SECURITIES BEEN APPROVED BY THE SEC OR ANY STATE SECURITIES COMMISSION. NEITHER THE SEC NOR THE STATE SECURITIES COMMISSION HAS DETERMINED THE ACCURACY OR ADEQUACY OF THIS DISCLOSURE STATEMENT OR UPON THE MERITS OF THE PLAN.

HOLDERS OF CLAIMS SHOULD CAREFULLY READ THIS DISCLOSURE STATEMENT IN ITS ENTIRETY, INCLUDING THE EXHIBITS, PRIOR TO VOTING ON THE PLAN.  IN THE EVENT OF ANY INCONSISTENCIES BETWEEN THE PROVISIONS OF THE PLAN AND THIS DISCLOSURE STATEMENT, THE PROVISIONS OF THE PLAN SHALL CONTROL.  THE DISCLOSURE STATEMENT MAY NOT BE RELIED ON FOR ANY PURPOSE OTHER THAN TO DETERMINE WHETHER TO VOTE TO ACCEPT OR REJECT THE PLAN, AND NOTHING STATED HEREIN SHALL CONSTITUTE AN ADMISSION OF ANY FACT OR LIABILITY BY ANY PARTY, OR BE ADMISSIBLE IN ANY PROCEEDING INVOLVING THE DEBTOR OR ANY OTHER PARTY, OR BE DEEMED CONCLUSIVE EVIDENCE OF THE TAX OR OTHER LEGAL EFFECTS OF THE PLAN ON THE DEBTOR OR THE HOLDERS OF CLAIMS OR EQUITY INTERESTS.

# ARTICLE I.

## INTRODUCTION

This Disclosure Statement is submitted by WC 2101 W Ben White, LP (the "**Debtor**"), the Debtor-in-possession in this Chapter 11 Case[1], in connection with the Debtor's efforts to solicit votes necessary to confirm the Debtor's Plan of Reorganization (the "**Plan**").  A copy of the Plan is included with the materials supplied in the packet you have received.

## SUMMARY

The following is a brief overview of certain material provisions of the Plan. This overview is qualified by reference to the provisions of the Plan, which is attached hereto as **Exhibit A**, as amended from time to time. In the event that any inconsistency or conflict exists between this Disclosure Statement and the Plan, the terms of the Plan will control.  Statements as to the rationale underlying the treatment of Claims and Interests under the Plan are not intended to, and shall not, waive, compromise or limit any rights, claims or causes of action in the event the Plan is not confirmed.

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, Professional Fee Claims, and Priority Tax Claims have not been classified. For a discussion of certain additional matters related to Administrative Claims, Professional Fee Claims, and Priority Tax Claims, *see* Section 5.3.

| CLASS | SUMMARY OF TREATMENT | STATUS/ ENTITLED TO VOTE? | ESTIMATED AGGREGATE AMOUNT OF CLAIMS OR INTERESTS | ESTIMATED PERCENTAGE RECOVERY |
|---|---|---|---|---|
| Class 1 - Lender | The Lender's Allowed Claim shall be paid at the election of the Debtor either (a) over the time period specified in the Plan or (b) from cash from proceeds of refinancing or sale. | **Impaired**<br><br>Entitled to Vote | $4,134,297.27[2] | 100% |
| Class 2 - | Each holder of an | **Impaired** | $13,692.33[3] | 100% |

---

[1]  Capitalized terms that are not defined in the Disclosure Statement are defined in the Plan.

[2]  The Debtor reserves the right to contest the amount asserted by the Lender.

[3]  The Debtor reserves the right to object to any claims that it contests.

| CLASS | SUMMARY OF TREATMENT | STATUS/ ENTITLED TO VOTE? | ESTIMATED AGGREGATE AMOUNT OF CLAIMS OR INTERESTS | ESTIMATED PERCENTAGE RECOVERY |
|---|---|---|---|---|
| Allowed Unsecured Claims | Allowed Unsecured Claim shall receive payment in full of the allowed amount of each holder's claim, to be paid thirty (30) days following payment of the Class 1 claim. | Entitled to Vote | | |
| Class 3 - Allowed Equity Interests | Each holder of an Equity Interest shall retain such interests, but shall not receive any distribution on account of such interests until Class 1 and Class 2 are paid in full. | **Unimpaired**<br><br>Deemed to Accept the Plan | Retention of existing interests | N/A |

1.1 **Filing of the Debtor's Chapter 11 Case.** On February 4, 2020 (the "Petition Date" or the "Filing Date"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code") in the United States Bankruptcy Court for the Western District of Texas, Austin Division ("Court" or "Bankruptcy Court"). The Debtor continues to manage its affairs as a debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. This Disclosure Statement and the accompanying Plan are filed on behalf of the Debtor.

1.2 **Purpose of Disclosure Statement**

The purpose of this Disclosure Statement is to provide you, as the holder of a Claim against the Debtor, with information to enable you to make a reasonably informed decision on the Plan before exercising your right to vote to accept or reject the Plan.

On [date to be determined], after notice and a hearing, the Bankruptcy Court approved this Disclosure Statement as containing information of a kind and in sufficient detail adequate to enable the holders of Claims against the Debtor to make an informed judgment to accept or reject the Plan. **THE BANKRUPTCY COURT'S APPROVAL OF THIS DISCLOSURE STATEMENT DOES NOT CONSTITUTE A GUARANTY OF THE ACCURACY OR COMPLETENESS OF THIS INFORMATION OR THE BANKRUPTCY COURT'S ENDORSEMENT OF THE PLAN.**

You should read all of this Disclosure Statement before voting on the Plan. **HOWEVER, THE DISCLOSURE STATEMENT IS NOT INTENDED TO REPLACE A CAREFUL AND DETAILED REVIEW AND ANALYSIS OF THE PLAN ITSELF BY EACH HOLDER OF A CLAIM OR INTEREST. THE DISCLOSURE STATEMENT IS INTENDED TO AID AND SUPPLEMENT THAT REVIEW. THE DESCRIPTION OF**

**THE PLAN IS A SUMMARY ONLY. HOLDERS OF CLAIMS AND INTERESTS AND OTHER PARTIES IN INTEREST ARE CAUTIONED TO REVIEW THE PLAN AND ANY RELATED ATTACHMENTS IN THEIR ENTIRETY FOR A FULL UNDERSTANDING OF THE PLAN'S PROVISIONS. THE DISCLOSURE STATEMENT IS QUALIFIED IN ITS ENTIRETY BY REFERENCE TO THE PLAN.**

You are urged to consult with your own financial and other advisors in deciding whether to vote to approve or reject the Plan. No solicitation of votes may be made except pursuant to this Disclosure Statement, and no person has been authorized to use any information concerning the Debtor or its business other than the information contained in this Disclosure Statement.

<u>**About this Disclosure Statement**</u>:

• The statements contained in this Disclosure Statement are made as of the date that the Bankruptcy Court enters an order approving this Disclosure Statement, unless another time is specified in this Disclosure Statement. Neither the delivery of this Disclosure Statement nor any action taken in connection with the Plan implies that the information contained in this Disclosure Statement is correct as of any time after that date.

• Unless the context requires otherwise: (a) the gender (or lack of gender) of all words used in this Disclosure Statement includes the masculine, feminine and neuter; (b) references to articles and sections (other than in connection with the Bankruptcy Code, the Bankruptcy Rules, another specified law or regulation or another specified document) refer to the articles and sections of this Disclosure Statement; and (c) "including" means "including, without limitation."

• Many capitalized words used in this Disclosure Statement have been defined in the context of the provisions in which they first appear within this Disclosure Statement. Any other capitalized terms used in this Disclosure Statement are intended to have the meanings ascribed to them in the Plan. Any capitalized term not defined in the context of a provision or in the Plan shall have the meaning ascribed to that term in the Bankruptcy Code or Bankruptcy Rules, whichever is applicable.

• You may not rely on this Disclosure Statement for any purpose other than to determine how to vote on the Plan. Nothing contained in this Disclosure Statement constitutes or will be deemed to be advice on the tax or other legal effects of the Plan on holders of Claims or interests.

• Certain of the information contained in this Disclosure Statement is forward-looking. This Disclosure Statement contains estimates and assumptions that may prove not to have been accurate and financial projections that may be materially different from actual future experiences.

• Acceptance or rejection of the Plan is subject to a number of risks. *See* "Risk Factors" at Section 9 of this Disclosure Statement.

### 1.3  Plan Balloting and Confirmation Procedures

#### *Holder of Claims and Interests Entitled to Vote*

Only Classes of Claims and interests that are (i) "impaired" by a plan of reorganization or liquidation and (ii) entitled to receive a distribution under such a plan are entitled to vote to accept or reject a plan under the Bankruptcy Code. In this case, the holders of Claims in Classes 1 and 2 are impaired and are entitled to vote to accept or reject the Plan.

### Voting Procedures

If you are entitled to vote to accept or reject the Plan, a Ballot (the "**Ballot**") for acceptance or rejection of the Plan is enclosed. BALLOTS FOR ACCEPTANCE OR REJECTION OF THE PLAN ARE BEING PROVIDED TO THE HOLDERS OF CLAIMS IN CLASSES 1 AND 2 BECAUSE THEY ARE THE ONLY HOLDERS OF CLAIMS THAT MAY VOTE TO ACCEPT OR REJECT THE PLAN. If you are the holder of a Claim in one of these Classes and did not receive a Ballot, received a damaged or illegible Ballot, or lost your Ballot, or if you are a party in interest and have any questions concerning the Disclosure Statement and exhibits hereto, the Plan or the voting procedures in respect thereof, please contact:

Mark Ralston
FISHMAN | JACKSON | RONQUILLO PLLC
13155 Noel Road, Suite 700 | Dallas, Texas 75240
Email: mralston@fjrpllc.com

After carefully reviewing this Disclosure Statement, please indicate your acceptance or rejection of the Plan by voting in favor of or against the Plan, then return the Ballot to the Debtor's counsel, at the address set forth on the Ballot, by **5:00 p.m.**, (Prevailing Central Time) on **[date to be determined]**. Any Ballot not indicating an acceptance or rejection will be deemed an acceptance of the Plan. You may also return your Ballot by courier, fax or email by following the instructions on the Ballot. **ANY BALLOTS RECEIVED BY THE DEBTOR'S COUNSEL AFTER 5:00 P.M., PREVAILING CENTRAL TIME, ON [date to be determined], WILL NOT BE COUNTED, UNLESS THIS DATE IS EXTENDED BY THE BANKRUPTCY COURT.**

### Voting Requirements for Class Acceptance of the Plan

YOUR ACCEPTANCE OF THE PLAN IS IMPORTANT. In order for the Plan to be "accepted" by Creditors and interest holders, at least sixty-six and two-thirds percent (66.66%) in amount of Allowed Claims and more than fifty percent (50%) in number of Allowed Claims voting in each Class must accept the Plan. By not voting, a Creditor favoring acceptance of the Plan jeopardizes confirmation.

**Confirmation Hearing**

The Bankruptcy Court has entered an order fixing [date to be determined], at [time to be determined] (Prevailing Central Time), Bankruptcy Courtroom 1 for the Hon. Tony M. Davis, 903 San Jacinto, Austin, Texas as the date, time and place for the initial commencement of a hearing on confirmation of the Plan, and fixing [date to be determined], at [time to be determined] (Prevailing Central Time), as the time by which all objections to confirmation of the Plan, which must be accompanied by a memorandum of authorities, must be filed with the Bankruptcy Court and served on counsel for the Debtor. The confirmation hearing may be adjourned from time to time without further notice except for the announcement of the adjourned time and date at the confirmation hearing or any adjournment thereof.

Section 1128(a) of the Bankruptcy Code provides that any party in interest may object to confirmation of a plan. Any objection to confirmation of the Plan must be in writing, conform to Federal Rules of Bankruptcy Procedure and Local Rules of the Bankruptcy Court, set forth the name of the objecting party, the nature and amount of the Claim or Interest held or asserted by the objecting party against the Debtor's Estate, the basis for the objection and the specific grounds thereof. The objection, together with proof of service thereof, must then be filed with the Bankruptcy Court, with copies served upon the following and upon the Service List in this case:

Mark Ralston
FISHMAN | JACKSON | RONQUILLO PLLC
13155 Noel Road, Suite 700 | Dallas, Texas 75240
Email: mralston@fjrpllc.com

**UNLESS AN OBJECTION IS TIMELY AND PROPERLY SERVED AND FILED BY [date to be determined] AT 5:00 P.M. (PREVAILING CENTRAL TIME), IT MAY NOT BE CONSIDERED BY THE BANKRUPTCY COURT.**

**ARTICLE II.
DEBTOR'S BACKGROUND AND FINANCIAL PICTURE**

2.1     **History of Debtor and Causes of Bankruptcy Filing**

***The Debtor's Business Operations***

Nate Paul is a successful real estate entrepreneur very active in the Austin market - one of the hottest real estate markets in the country. WC Ben White, LLC ("**Ben White**") is manager of the Debtor. Ben White is an affiliate of Nate Paul. The Debtor owns and operates a retail shopping center in South Austin (the "**Property**"). The debt owed to the Lender is approximately $4.4 million. Current estimates indicate the Property has an equity cushion in excess of $8 million more than the debt. As a result, the Debtor has ***substantial equity*** in the Property.

5

*Events Leading to the Chapter 11 Case*

The Debtor is in the process of investigating potential claims and causes of action against the Lender, including (but not limited to) potential claims and causes of action stemming from Lender's actions regarding certain loan extensions leading up to the commencement of this case. The Debtor reserves the right to conduct discovery of and/or examine, pursuant to Federal Rule of Bankruptcy Procedure 2004, any entity in connection with their investigation. The Debtor also reserves any and all rights to assert potential claims and causes of action against Lender (each such assertion of rights, a "**Lender Action**").

## ARTICLE III.
## PROCEEDINGS AND EVENTS IN THE CHAPTER 11 CASE

### 3.1    **Commencement and Administration of the Case**

The Debtor's Chapter 11 Case was commenced on February 4, 2020. The following is a description of the more significant matters to have come before the Court.

*Approval of Employment of Fishman as Debtor's Counsel*

On March 23, 2020, the Bankruptcy Court approved the retention of Fishman Jackson Ronquillo, PLLC ("**Fishman**"), as counsel to the Debtor. As counsel for the Debtor, the firm is entitled to seek interim and final compensation from the Debtor's Estate upon duly noticed application and after a hearing before the Court.

*No Unsecured Creditors' Committee*

The United States trustee has not appointed a committee of unsecured creditors in this Chapter 11 Case.

*Administrative*

On February 28, 2020, the Debtor filed the Schedules and Statements of Financial Affairs.

The section 341 meeting of Creditors was held on March 10, 2020.

*Impact of COVID-19*

Since mid-February, the global pandemic ("**COVID-19**") has escalated from a largely isolated event affecting China to a global pandemic affecting the entire world.[4] COVID-19 is having an unforeseen and unprecedented impact on the global and local economy. On the

---

[4] On February 18, 2020, there were approximately 79,000 confirmed cases of COVID-19 in China and approximately 5,000 across the rest of the world. As of March 23, 2020, there were approximately 270,000 confirmed cases of COVID-19 outside of China, including 35,241 in the United States. As of April 6, 2020, there are now approximately 1,325,000 cases of confirmed cases of COVID-19 worldwide, including over 350,000 in the United States. https://www.arcgis.com/apps/opsdashboard/index.html#/bda7594740fd40299423467b48e9ecf6.

afternoon of March 13, 2002, President Trump declared COVID-19 a national emergency. Pres. Proc. No. 9994, 85 F.R. 15337, 2020 WL 1272563. President Trump also issued guidelines encouraging social distancing on March 16, 2020, and extended that directive on March 29, 2020, for an additional thirty days.[5] Texas Governor Abbott has declared a state of disaster.[6] Governor Abbott has also issued a mandate requiring all travelers entering the State from high impact areas such as New York, New Orleans, Miami, Chicago, Detroit, California or Washington to self-quarantine for fourteen days.[7] On March 24, 2020, Austin Mayor Adler issued a "Stay at Home Order" that prohibits, among other things: (i) public and private gatherings of ten or more people; (ii) the operation of any business not deemed "essential"; and (iii) all non-essential travel.[8] Other cities across the State have issued similar orders, including San Antonio,[9] Dallas[10] and Houston.[11] New York Governor Cuomo has issued a similar order for the entire State of New York.[12] Employers across the country are encouraging (or requiring) their employees to work remotely.[13] As of March 30, 2020, at least twenty-seven states have issued stay-at-home orders that require all non-essential businesses to close or have their workforce work from home.[14] Many other local, state and national authorities are recommending "social distancing" and "self-quarantining," which is impeding the ability of interested parties to communicate both within their organizations and with any outside necessary parties.

This mass sheltering in place, closure of non-essential businesses and work-from-home mandates have restricted mobility and ordinary course activities to a point where business fundamentals have been substantially affected across nearly all industries.  The restrictions required to mitigate the spread of COVID-19 and its harmful effects in the United States are significantly hindering the ability of the Debtor given that the above-referenced orders issued at both the state and local levels have made it very difficult for parties to tour the Property, engage in adequate property diligence, to communicate with one another and their own colleagues, and other normal course activities that would be necessary for a interested parties to transact with the Debtor.

Moreover, relevant parties are largely working from home, thus inhibiting the ability to communicate with their colleagues.  Further, the credit markets and lending community are experiencing unprecedented uncertainty, inhibiting their ability to conduct normal course operations.

---

[5] https://www.nytimes.com/2020/03/29/us/politics/trump-coronavirus-guidelines.html.

[6] https://gov.texas.gov/news/post/governor-abbott-declares-state-of-disaster-in-texas-due-to-covid-19.

[7] https://cbsaustin.com/news/local/texas-expands-travel-restrictions-launches-pop-up-hospital-as-coronavirus-spreads.

[8] http://www.austintexas.gov/news/stay-home-orders-announced-further-contain-spread-covid-19.

[9] https://www.sanantonio.gov/Portals/0/Files/health/COVID19/Website%20Docs/Emergency%20Declaration%20No.%205.pdf?ver=2020-03-23-175107-393.

[10] https://www.dallascounty.org/Assets/uploads/docs/judge-jenkins/covid-19/03242020-AmendedOrder-FINAL.pdf.

[11] https://www.readyharris.org/stay-home.

[12] https://www.governor.ny.gov/news/no-2026-continuing-temporary-suspension-and-modification-laws-relating-disaster-emergency.

[13] https://www.latimes.com/business/story/2020-03-12/amazon-google-workers-work-from-home-coronavirus; https://www.statesman.com/business/20200310/dell-encourages-austin-area-employees-to-work-from-home.

[14] https://www.cnn.com/2020/03/23/us/coronavirus-which-states-stay-at-home-order-trnd/index.html.

As of the date of this filing, Governor Abbott of Texas has announced a partial reopening plan for the State of Texas, with Phase One beginning May 1, 2020.[15] Debtors are hopeful that this reopening plan will be successful and the timelines offered herein are predicated on the successful implementation of the reopening strategy.

## ARTICLE IV.
## SELECTED FINANCIAL INFORMATION,
## PROJECTIONS AND VALUATION ANALYSIS

### 4.1 **General**

This section provides summary financial information concerning the Debtor, its assets and potential sources of recovery for Creditors. The information is based on information available as of the date of this Disclosure Statement. Any forward-looking projections, including analysis and valuation of Litigation Claims, is based upon the Debtor's best estimates and belief but, as with any projections, may vary in the future.

### 4.2 **Valuation and Description of Debtor's Assets**

Set forth below is a summary of the value of the Property:

| Fair Market Value as Scheduled |
| --- |
| $12,090,951.00 |

The Lender (as defined herein) asserts a claim of approximately $4.4 million.[16] Under all scenarios, the Lender is significantly oversecured.

## ARTICLE V.
## SUMMARY OF THE DEBTOR'S PLAN

### 5.1 **Explanation of Chapter 11**

Chapter 11 is the principal reorganization chapter of the Bankruptcy Code. Under chapter 11, the plan proponent attempts to restructure a debtor's financial affairs or effectively liquidate the debtor's assets for the benefit of the creditors, equity interest holders and other parties in interest. The chapter 11 plan is the debtor's agreement with its creditors containing the terms and conditions for the operation and/or liquidation of the properties and assets of the debtor and the treatment of the claims and interests of creditors and parties-in-interest.

According to section 1125 of the Bankruptcy Code, acceptances of a chapter 11 plan may be solicited by the debtor only after a written disclosure statement approved by the Bankruptcy

---

[15] https://gov.texas.gov/news/post/governor-abbott-announces-phase-one-to-open-texas-establishes-statewide-minimum-standard-health-protocols
[16] The Debtor reserves the right to contest the amount asserted by the Lender.

Court as containing adequate information has been provided to each creditor or equity interest holder.

5.2     **Terms of the Plan Control**

The following represents the Debtor's best efforts to describe the treatment afforded the Claims of the Creditors in various Classes. Creditors should be aware that the terms of the Plan control the treatment of all Claims. In the event of any inconsistencies between the Plan and this Disclosure Statement, the terms of the Plan shall be, in all events, determinative. The Debtor urges all Creditors to read the Plan for a complete understanding of the treatment of their Claims.

5.3     **Claims**

As provided in section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims and Priority Tax Claims are not classified for purposes of voting on, or receiving distributions under, the Plan.  Holders of Administrative Expense Claims and Priority Tax Claims are not entitled to vote on the Plan but, rather, are treated separately in accordance with Sections 2.02 and 2.04 of the Plan and under section 1129(a)(9)(A) of the Bankruptcy Code.

**Administrative Claims**.  Each holder of an Allowed Administrative Claim (except any holder that agrees to a lesser or otherwise different treatment) shall be paid in full, in Cash, in full satisfaction of such Claim, on the later of the Effective Date or the date on which such Administrative Claim becomes an Allowed Claim, *provided, however*, that (a) Allowed Administrative Claims representing (1) post-petition liabilities incurred in the ordinary course of business by the Debtor or (2) post-petition contractual liabilities arising under loans or advances to the Debtor, whether or not incurred in the ordinary course of business, shall be paid in accordance with the terms and conditions of the particular transactions relating to such liabilities and any agreements relating thereto and (b) Professional Fee Claims shall be paid on the later of (i) thirty (30) days after the Effective Date, or (ii) thirty (30) days following the date of a Final Order determining and Allowing such Claim as a Professional Fee Claim. Fishman estimates its fees and expenses incurred through the end of April 2020 totaled approximately $23,000.

**Statutory Fees**.  On or before the Effective Date, Administrative Expense Claims for fees payable pursuant to 28 U.S.C. § 1930, as determined by the Bankruptcy Court at the Confirmation Hearing, will be paid in Cash equal to the Allowed amount of such Administrative Expense Claims. All fees payable pursuant to 28 U.S.C. § 1930 subsequent to the Confirmation Date will be paid by the Reorganized Debtor in accordance therewith until the entry of a Final Decree.

**Priority Tax Claims**.  On the first business day of the month following the Effective Date, the Debtor shall commence making monthly payments on account of all Priority Tax Claims in an amount at least sufficient to meet the minimum payment requirements provided under section 1129(a)(9)(C) of the Bankruptcy Code, with subsequent payments made monthly thereafter.  In the event that any of the Property secured by the Secured Tax Claims is sold during the term of the Plan or if the Lender's secured debt is refinanced during the term of the Plan, the unpaid taxes secured by such

Property shall be paid in full upon the sale of the Property or the refinancing of the Lender's secured debt, as applicable.

The Taxing Authorities shall retain all Liens until such taxes are paid in full.

5.4 **Classification and Treatment**

In accordance with section 1123(a)(1) of the Bankruptcy Code, all Claims and Equity Interests are placed in the Classes described below for all purposes, including voting on, confirmation of, and distributions under, the Plan as follows:

| Class No. | Class Description | Status | Voting Rights |
|---|---|---|---|
| Class 1 | Lender | Impaired | Entitled to Vote |
| Class 2 | Allowed Unsecured Claims | Impaired | Entitled to Vote |
| Class 3 | Allowed Equity Interests | Unimpaired | Not Entitled to Vote |

### Class 1 – Lender

(1)     The Lender's Allowed Claim[17] shall be paid at the election of the Debtor pursuant to one or more of the scenarios set forth below. The Debtor reserves the right to escrow proceeds to the extent there is still a dispute as to Lender's secured claim or in connection with a Lender Action.  The scenarios include, (a) cash proceeds from leasing, (b) cash proceeds from refinance, or (c) cash proceeds from a sale.

A.     **Cash From Proceeds of Leasing**

1. The Debtor currently generates sufficient cash flow from rental income to commence the regular payment of interest to Lender, and Debtor commenced the payment of contractual non-default interest as of the date hereof (May 4, 2020). Debtor intends to continue to use the proceeds of such rental income to pay the Lender any required payments, as well as any expenses as approved under any Cash Collateral Agreement with Lender and/or Cash Collateral Order entered by the Bankruptcy Court. Beginning on the 1st day of the month after the Effective Date, Debtor will pay to Lender interest monthly interest-only payments at three and one-quarter percent (3.25%) or such other amount as is determined by the Court. All remaining principal, pre-Effective Date interest, and costs will be due and payable on June 30, 2021, or such other date as determined by the Court.

---

[17] The Debtor reserves the right to contest the amount asserted by the Lender, the extent, priority and validity of its liens and to assert causes of action for damages.

**B.**     **Cash From Proceeds of Refinancing or Sale**

1. The secured claim of the Lender will be paid from cash proceeds from the refinancing or sale of the Property.

2. Debtor may, consistent with section 1123(a)(5)(D) of the Bankruptcy Code, market and sell any or all of the Property. In the event of such a sale, Lender will receive the net proceeds from the sale of all or a portion of the Property after payment of customary closing costs (including broker's fees, title insurance fees, and other typical closing costs and taxes attributable to the Property) to be applied as determined by the Court until the Lender's Allowed Claim is satisfied in full.

3. Reorganized Debtor shall be entitled to close the sale of the Property and the Lender shall be required to release its lien provided that the sale provides either for the payment of the portion of Lender's (a) allowed claim in full, or (b) if Lender's claim is not allowed, then the payment of the undisputed portion of Lender's claim in full, with additional proceeds sufficient to pay any disputed portion of Lender's claim to be held in the registry of the Bankruptcy Court, in agreed-upon escrow account, or as otherwise ordered by the Bankruptcy Court. To the extent a Lender Action is pending, the Bankruptcy Court shall determine how much of the sale or refinance proceeds will be held in escrow until the resolution by final order or judgment in the Lender Action.

   In the event of a monetary default under these provisions, Lender shall provide Reorganized Debtor written notice stating the basis for the default (the "**Default Notice**") and Reorganized Debtor shall have five (5) business days from the Default Notice to cure said default (the "**Cure Period**"). If such default is not cured within the Cure Period, Lender shall be entitled to pursue its available remedies under the Loan Documents. Lender shall only be required to provide Reorganized Debtor three (3) such Default Notices and Cure Periods. Lender may be paid in whole or in part at any time without penalty from the proceeds of the Sale or from any Refinancing obtained by or on behalf of the Debtor or the Reorganized Debtor. Notwithstanding same, the Reorganized Debtor reserves any and all rights to contest the validity of any such default declared by the Lender and the Bankruptcy Court shall retain jurisdiction to hear such disputes.

4. Lender may be paid in whole or in part at any time without penalty from the proceeds of the Sale or from any Refinancing obtained by or on behalf of the Debtor or the Reorganized Debtor.

C.       **Provision Applicable to Foregoing**

1.  To the extent of any dispute regarding the Lender's Allowed Claim, that may be adjudicated and determined in a Court of competent jurisdiction, including the State Court or the Bankruptcy Court.

This Class is impaired.

*Class 2 – Unsecured Claims.*

Each holder of an Allowed Unsecured Claim[18] shall receive payment in full of the allowed amount of each holder's claim, to be paid thirty (30) days following payment of the Class 1 claim.

This Class is impaired.

*Class 3 – Equity Interests.*

Each holder of an Equity Interest shall retain such interests, but shall not receive any distribution on account of such interests until Class 1 and Class 2 are paid in full.

This Class is not impaired.

5.5    **Discharge of Claims.**

Except as otherwise provided in the Plan, the rights afforded in the Plan and the payments and distributions to be made thereunder are in complete exchange for, and in full satisfaction and release of, all existing Claims, debts and obligations of any kind, nature or description whatsoever of or against the Debtor or any of its assets or property to the fullest extent permitted under section 1141 of the Bankruptcy Code.  Upon the Effective Date, and except as otherwise provided in the Plan, all existing Claims against the Debtor and the Reorganized Debtor shall be and shall be deemed to be discharged. Subject to the provisions of the Plan, all holders of Claims or Equity Interests shall be precluded from asserting against the Debtor, or any of its assets or property, any other or further Claim based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date, whether or not such holder filed a proof of Claim or proof of Equity Interest.   Subject to the provisions of the Plan, upon the Effective Date, the Debtor shall be deemed discharged and released from any and all Claims, including, but not limited to, demands and liabilities that arose before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not (i) a proof of Claim or Equity Interest based upon such obligation is filed or deemed filed under section 501 of the Bankruptcy Code; (ii) a Claim or Equity Interest based upon such debt is Allowed under section 502 of the Bankruptcy Code; or (iii) the holder of a Claim or Equity Interest based upon such debt has accepted the Plan. Except as provided herein, the Confirmation

---

[18] The Debtor reserves the right to object to any claims that it contests.

Order shall be a judicial determination of discharge of all liabilities of the Debtor and the Reorganized Debtor. In accordance with section 524 of the Bankruptcy Code, the discharge provided for hereunder shall void any judgment against the Debtor to the extent it relates to a Claim discharged, and operates as an injunction against the prosecution of any action against the Debtor or its Property to the extent it relates to a discharged Claim.

5.6     **Plan Exculpation.**

None of the Debtor, Reorganized Debtor, their counsel, holders of Equity Interests, or any other party in interest, or any of their respective members or former partners, general partners, members, agents, employees, representatives, financial advisors, attorneys or affiliates, or any of their successors or assigns, shall be liable for any act or omission in connection with, relating to or arising out of this Chapter 11 Case, the negotiation and pursuit of confirmation of the Plan, the consummation of the Plan or the administration of the Plan (the "**Chapter 11 Activities**"), except for their acts or omissions constituting willful misconduct or gross negligence, as finally determined by a court of competent jurisdiction, and in all respects are entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities in connection with the Chapter 11 Activities. No holder of a Claim, or any other party in interest, including their respective agents, employees, representatives, financial advisors, attorneys or affiliates, have any right of action against the Debtor, the Reorganized Debtor, or their counsel for any act or omission in connection with the Chapter 11 Activities, except for their acts or omissions constituting willful misconduct or gross negligence as finally determined by a court of competent jurisdiction.

## ARTICLE VI.
## IMPLEMENTATION OF PLAN

6.1     **Summary of Implementation of the Plan**

All Cash necessary for the Reorganized Debtor to make payments pursuant to the Plan shall be obtained from rental receipts, proceeds of refinance, proceeds of a sale, or from Bankruptcy Court-approved financing, including from an affiliate of the Debtor.

6.2     **The Reorganized Debtor's Obligations Under the Plan**

The Reorganized Debtor shall perform all of the obligations under the Plan, including obligations to pay or otherwise satisfy the Allowed Claims. From and after the Effective Date, the Reorganized Debtor shall, among other things:

(1)     administer the Plan and take all steps and execute all instruments and documents necessary to effectuate the Plan;

(2)     reconcile Claims and resolve Disputed Claims, and administer the Claims allowance and disallowance processes as set forth in the Plan, including, without limitation, objecting to, prosecuting, litigating, reconciling, settling and resolving Claims and Disputed Claims in accordance with the Plan;

13

(3)     make decisions regarding the retention, engagement, payment and replacement of professionals, employees and consultants;

(4)     administer the Distributions under the Plan, including (i) making Distributions in accordance with the terms of the Plan and (ii) establishing and maintaining the various Reserves;

(5)     exercise such other powers as necessary or prudent to carry out the provisions of the Plan;

(6)     invest any Cash pending Distribution;

(7)     file appropriate tax returns; and

(8)     take such other actions as may be necessary or appropriate to effectuate the Plan.

Following the Effective Date, the Debtor may, among other things, pay its post Effective Date operating expenses in the ordinary course of its business without notice or orders of this Court.

### 6.3    **Exemption from Transfer Taxes**

Pursuant to section 1146(c) of the Bankruptcy Code, the issuance, transfer, or exchange of notes or equity securities under the Plan or the making or delivery of any deed or other instrument or transfer under, in furtherance of, or in connection with the Plan, including without express or implied limitation, any transfers to or by the Reorganized Debtor, shall not be subject to any transfer, sales, stamp or other similar tax.

### 6.4    **Claims Objections**

Notwithstanding the occurrence of the Effective Date, and except as to any Claim that has been Allowed before the Effective Date, the Reorganized Debtor may object to the Allowance of any Claim against the Debtor or seek estimation of any Claim on any grounds permitted by the Bankruptcy Code.  All objections to Claims must be brought by filing the appropriate pleading in the Bankruptcy Court before the first Business Day that is 60 days after the Effective Date, but the Bankruptcy Court may approve a later date on the Reorganized Debtor's motion filed (but not necessarily heard) before the first Business Day that is 60 days after the Effective Date.  Debtor may contest the amount of attorney's fees and interest sought by any creditor. ***Debtor reserves the right to object to or seek estimation of any Claims.***

### 6.5    **Contingent Claims**

Until a Contingent Claim becomes an Allowed Claim or is Disallowed, the Claim will be treated as a Disputed Claim for all purposes under the Plan. The holder of a Contingent Claim will be entitled to a distribution under the Plan only when the Contingent Claim becomes an Allowed Claim. Any Contingent Claim for reimbursement or contribution held by a Person that may be liable with the Debtor is Disallowed as of the Effective Date if: (a) that Creditor's Claim

14

is Disallowed; (b) the Claim for reimbursement or contribution is contingent as of the Effective Date; or (c) that Person asserts a right of subrogation to the rights of the Creditor under section 509 of the Bankruptcy Code.

6.6     **Distributions on Allowance or Disallowance of Disputed**

No Distributions will be made to any holder of a Claim unless and until the Claim becomes an Allowed Claim. If a Claim is not an Allowed Claim as of the Effective Date, Distributions on account of that Claim will commence only when the Claim becomes an Allowed Claim after the Effective Date or as otherwise specifically provided in this Plan. If a Disputed Claim becomes an Allowed Claim, the Reorganized Debtor will make a Distribution in accordance with the terms of this Plan applicable to Claims of the Class in which that Claim resides.

6.7     **Undeliverable/Returned Distributions**

Any Distribution to be made to a Creditor will be sent to that Creditor at (i) the address set forth on the proof of Claim filed for such Creditor, or (ii) if no proof of Claim is filed, at the address set forth on the Debtor's Schedules. In the event that a Distribution as herein provided is returned as undeliverable, or a Distribution is returned on account of there being no payment due to the affected Creditor, the Reorganized Debtor shall hold such Distribution for the affected Creditor for a period of 60 days following the Date of that Distribution for the benefit of the Creditor. If the affected Creditor does not make a demand, in writing, for such unclaimed Distribution within the 60-day period, the Creditor shall forfeit all entitlement to the Distribution, and the Distribution shall revert to the Reorganized Debtor.

6.8     **De Minimis Distributions**

Any other provision of the Plan notwithstanding, the Reorganized Debtor shall not be required to make Distributions to holders of Allowed Claims in an amount less than $50.00 (unless such Allowed Claim is less than $50.00). Cash allocated to an Allowed Claim but withheld from Distribution pursuant to this subsection shall be held by the Reorganized Debtor for the account of and future Distribution to the holder of such Allowed Claim.

6.9     **Additional Charges**

Except as may be expressly provided in the Plan or allowed by Final Order of the Bankruptcy Court, no interest, penalty, attorney's fee or late charge shall be allowed or paid with respect to any Claim.

6.10    **Treatment of Executory Contracts and Unexpired Leases**

(a)     **Assumption or Rejection of Executory Contracts and Unexpired Leases**

On the Effective Date, except as otherwise provided in the Plan, any unexpired lease or executory contract that has not been previously assumed or rejected by the Debtor pursuant to an order of the Bankruptcy Court shall be deemed rejected by the Debtor under sections 365(a) and 1123 of the Bankruptcy Code. *Debtor will file a list of contracts to be assumed prior to date*

*of the Confirmation Hearing*. Entry of the Confirmation Order shall constitute approval of such assumptions or rejections, as the case may be, (as such lists may be amended, supplemented or modified on or before the Confirmation Date), pursuant to sections 365(a) and 1123 of the Bankruptcy Code. Any motions to assume executory contracts and unexpired leases pending on the Effective Date shall be subject to approval by the Bankruptcy Court on or after the Effective Date by a Final Order.

(b) **Objections to Assumption and Assignments of Executory Contracts and Unexpired Leases**.

To the extent that any party to an executory contract or unexpired lease identified for assumption, or any other party in interest, (a) asserts arrearages or damages pursuant to section 365(b)(1) of the Bankruptcy Code in an amount different from the amount, if any, set forth in the Petition and Schedules, (b) has any objection to the proposed adequate assurance of future performance, if required, or (c) has any other objection to the proposed assumption, cure, or assignment of a particular executory contract or unexpired lease on the terms and conditions provided for herein, all such asserted arrearages and any other objections shall be filed and served within the same deadline and in the same manner established for filing objections to Confirmation.

Failure to assert any arrearages different from the amount set forth in the Schedules (or the exhibits thereto), or to file an objection within the time period set forth above, shall constitute consent to the assumption, cure, and assignment on the terms provided for herein, including acknowledgment that (a) the Debtor (or its assignee(s)) has provided adequate assurance of future performance, if required, (b) the amount identified for "cure," if any, is the amount necessary to compensate for any and all outstanding defaults or actual pecuniary loss under the executory contract or unexpired lease to be assumed, and (c) no other defaults exist under such executory contract or unexpired lease.

If an objection to assumption and assignment is filed based upon lack of adequate assurance of future performance or otherwise, and the Court determines that the Debtor cannot assume the executory contract or unexpired lease either as proposed or as may be proposed pursuant to a modified proposal submitted by the Debtor, then the unexpired lease or executory contract shall automatically thereupon be deemed to have been rejected

(c) **Payments Related to Assumption of Executory Contracts and Unexpired Leases**. Any monetary defaults, including claims for actual pecuniary loss, under each executory contract and unexpired lease to be assumed under the Plan shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the cure amount, if any, as otherwise agreed by the parties or as ordered by the Bankruptcy Court, in Cash within 90 days following the Effective Date, or on such other terms as may be agreed to by the parties to such executory contract or unexpired lease. In the event of a dispute regarding (a) the amount of any cure or pecuniary loss payment, (b) the ability of Reorganized Debtor to provide adequate assurance of future performance under the contract or lease to be assumed, if required, or (c) any other matter pertaining to assumption, the cure or pecuniary loss payments required by section 365(b)(1) of the Bankruptcy Code shall be made within a reasonable time following entry of a Final Order resolving the dispute and approving assumption.

(d)  **Bar Date for Rejection Damages**. If the rejection of an executory contract or unexpired lease pursuant to Article 5 of the Plan gives rise to a Claim by the other party or parties to such contract or lease, such Claim, to the extent that it is timely filed and is a Allowed Claim, shall be classified in Class 2; provided, however, that the Unsecured Claim arising from rejection shall be forever barred and shall not be enforceable against the Debtor, Reorganized Debtor, their successors or properties, unless a proof of Claim is Filed and served on the Reorganized Debtor within 30 days after the date of the notice of the entry of an order of the Bankruptcy Court authorizing rejection of the executory contract or unexpired lease, which order may be the Confirmation Order.

(e)  **Contracts to be Assumed**.  Debtor is not required to designate contracts to be assumed or rejected until confirmation.

6.11  **Pending Claims and Causes of Action**

The following is a general discussion of the type and nature of claims and causes of action of the Estate:

NOTE: THE FOLLOWING DISCUSSION IS NOT INTENDED TO BE EXHAUSTIVE AND SHALL NOT LIMIT OR MODIFY ANY CLAIMS OR CAUSES OF ACTION OF THE ESTATE.

Some of the payments made by the Debtor to creditors within ninety (90) days of the filing of bankruptcy (or to an insider within one year of the filing of bankruptcy) may be subject to a claim for recovery as preferential transfers under section 547 of the Bankruptcy Code.

While the Debtor is unaware of any recoverable preferential transfers at this time, the Reorganized Debtor will retain the right to object to claims pursuant section 502(d) of the Bankruptcy Code or pursue any preferences.  The statements and schedules filed by the Debtor reflect that transfers were made in the 90 days prior to the Petition Date in the total amount of $581,476.90 to the Lender and that there were no to insiders in the one year period prior to the Petition Date.

**ALL CLAIMS OF THE BANKRUPTCY ESTATE ARE BEING PRESERVED AND TRANSFERRED TO REORGANIZED DEBTOR UNDER THE PLAN.**

Any and all causes of action which the Debtor may have, including, but not limited to Avoidance Actions, which may be enforceable under any statute, shall be preserved and shall constitute Property of the Estate to be conveyed to Reorganized Debtor in accordance with the Plan.  The Court shall retain jurisdiction to determine all such causes of action.

**YOU MAY BE SUED IF:**

i)  you were or are a Creditor and you received a payment on a prior debt within ninety (90) days before the Petition Date;

ii)  you were an insider of the Debtor and you received a payment on a prior debt within one (1) year before the Petition Date;

iii)    you received any payments or property from the Debtor for goods or services you did not deliver or provide before the Petition Date;

iv)    you received any payments of property from the Debtor without providing reasonably equivalent value;

v)    you received pre-payments, advances or deposits from the Debtor which you did not earn;

vii)    you were involved in pending litigation with the Debtor at the time of the Petition Date or have been sued thereafter;

viii)    you owe the Debtor any money under a contract or as a result of your breach of contract with such Debtor(s);

ix)    potential claims against you or any of your affiliates are described or referred to in this Disclosure Statement; or

x)    the Debtor has any claims against you under state or federal law, whether in contract or in tort, whether known or unknown.

## ARTICLE VII.
## CONFIRMATION OF THE PLAN

7.1    **Feasibility**

As a condition to confirmation of a plan, section 1129 of the Bankruptcy Code requires, among other things, that the Bankruptcy Court determine that confirmation is not likely to be followed by the liquidation or the need for further financial reorganization of the debtor.

The ability of the Debtor to fund the amounts contemplated under the Plan is premised on receiving proceeds from rental receipts, refinance, sale, Court approved financing or equity infusions from an affiliate of the Debtor. A copy of the Debtor's financial projections is attached hereto as **Exhibit B**.

7.2    **Best Interests Test**

In order to confirm the Plan, the Court must find that each holder of an impaired Claim or Equity Interest either (i) accepted the Plan or (ii) received or retained under the plan property of a value, as of the Effective Date, that is not less than the value such holder would receive if the Debtor were liquidated under chapter 7 of the Bankruptcy Code. In a typical chapter 7 case the debtor ceases operations and a trustee is appointed to conduct an orderly liquidation of the debtor's assets. The proceeds, net of trustee's fees and other costs and expenses incurred in conducting the liquidation, are distributed to creditors in accordance with their rights and statutorily prescribed priorities of payment.

If this Chapter 11 Case was converted to a liquidation under chapter 7, the Court would likely lift the automatic stay to permit the Lender to foreclose its Lien on the Property. The

Debtor believes that it is highly unlikely that the Lender would bid more than the amount of the indebtedness, meaning other creditors would likely recover nothing unless a higher cash bidder appeared at the sale.  Though possible, such bidders at this level rarely appear.  If the Property did sell at foreclosure for an amount in excess of the debt, that amount would be returned to the Debtor and could be used to pay Creditors. *See* the Liquidation Analysis attached hereto as **Exhibit C**.

Based upon the foregoing liquidation analysis, Unsecured Creditors and Equity Interest holders would receive no Distributions on account of their Claims in a chapter 7 liquidation. Under the Plan, those Creditors will receive Distributions more than they would get in a chapter 7 liquidation.  The Plan proposes to pay Secured and Unsecured Creditors in full. Accordingly, Secured Creditors are receiving at least as much as they would get under a chapter 7 liquidation.

**ARTICLE VIII.**
**ALTERNATIVES TO THE PLAN**

8.1    **General**

The Debtor believes that the Plan affords the holders of Claims the potential for the greatest realization on the Debtor's assets and, therefore, is in the best interests of such holders. If the Plan is not confirmed, however, the theoretical alternatives include: (a) an alternative plan of reorganization; or (b) liquidation of the Debtor under chapter 7 of the Bankruptcy Code; or (c) dismissal of this Chapter 11 Case.   BASED UPON DEBTOR'S ASSESSMENT, UNSECURED CREDITORS WOULD RECEIVE NO DISTRIBUTIONS IN A CHAPTER 7 CASE OR IN THE EVENT OF DISMISSAL OF THE CASE.

8.2    **Alternative Plans**

If the Plan is not confirmed, the Debtor or any other party in interest in the case could attempt to formulate and propose a different plan.  Other parties may propose alternative plans, but the Debtor does not believe that any other plan will provide a greater recovery for the Creditors than proposed by Debtor's Plan, or that any such plans will be feasible.

8.3    **Liquidation Under Chapter 7 or Dismissal**

If no Plan can be confirmed, this Chapter 11 Case may be converted to a case under chapter 7 of the Bankruptcy Code. In a chapter 7 case, a trustee would be elected or appointed to liquidate the assets of the Debtor.  The proceeds of the liquidation would be distributed to the respective holders of Claims against the Debtor in accordance with the priorities established by the Bankruptcy Code.  If the case were dismissed, the Lender would likely foreclose on the Project.

As set forth in the preceding Article, the Plan is clearly superior to a chapter 7 liquidation or dismissal of the case.

## ARTICLE IX.
## RISK FACTORS

9.1 **Bankruptcy Risks**

### *Non-Confirmation of Plan*

Although the Debtor believes that the Plan will satisfy all requirements necessary for confirmation by the Bankruptcy Court in accordance with the Bankruptcy Code, there can be no assurance that the Bankruptcy Court will reach the same conclusion. Moreover, there can be no assurance that modifications to the Plan will not be required for confirmation or that such modifications will not necessitate the re-solicitation of votes.

### *Non-Occurrence or Delayed Occurrence of the Effective Date*

Although the Debtor believes that the Effective Date will occur after the Confirmation Date following satisfaction of any applicable conditions precedent, there can be no assurance as to the timing of the Effective Date. If the conditions precedent to the Effective Date set forth in the Plan have not occurred or have not been waived, then the Confirmation Order will be vacated, in which event no distributions would be made under the Plan, the Debtor and all holders of Claims and Interests would be restored to the status quo as of the day immediately preceding the Confirmation Date, and the Debtor's obligations with respect to Claims and Interests would remain unchanged.

9.2 **Plan Risks**

### *Variance from Financial Projections and Feasibility Analysis*

The Debtor has prepared financial projections for the Reorganized Debtor based on certain assumptions. The projections and the feasibility analysis have not been compiled, audited, or examined by independent accountants and the Debtor makes no representations or warranties regarding the accuracy of the projections or the feasibility analysis or the ability to achieve forecasted results. Many of the assumptions underlying the projections and the feasibility analysis are subject to significant uncertainties and are beyond the control of the Debtor, including, but not limited to, sales, absorption rates, and other anticipated market and economic conditions. Inevitably, some assumptions will not materialize, and unanticipated events and circumstances may affect the ultimate financial results. Projections and feasibility analyses are inherently subject to substantial and numerous uncertainties and to a wide variety of significant business, economic and competitive risks, and the assumptions underlying the projections and the feasibility analysis may be inaccurate in any material respect. Therefore, the actual results achieved, the capital structure, and the recapitalization process, among other things, may vary significantly from the forecasts, and the variations may be material.

### *Compliance with Terms of Restructured Debt*

The Plan provides that the Debtor will perform its financial obligations under the restructured debt.  If the Debtor's actual financial performance does not meet its cash flow projections, however, and if other sources of liquidity are not available, there is a risk that the

Debtor might be unable to pay interest and principal payments on the reinstated obligations. In the event of a default under the Plan, such default in the performance of the Plan shall not automatically result in the termination of the Plan or constitute a revocation of the Confirmation Order. In the event of a default by the Debtor under the Plan, the Creditors may exercise any rights granted to them under documents executed to evidence the Plan or any rights available to them under applicable non-bankruptcy law, following notice and an opportunity to cure. In the absence of a document executed to evidence the Plan, the Plan may be enforced as a contract by filing suit to collect the payments required under the Plan as if the Plan were a promissory note or other written contract.

9.3 **Business Risks**

*Future Economic Conditions and COVID-19*

Economic conditions have been more robust in Austin and in Texas than in other parts of the country; however, the impact of COVID-19 on the local real estate market, if any, is unknown.

*Effectiveness of Business Strategy*

The Reorganized Debtor may not be able to effectively implement its business strategy.

**ARTICLE X.**
**CERTAIN FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN**

10.1 **Income Tax Consequences**

The transactions contemplated by the confirmation of the Plan may have an impact on the tax treatment received with respect to distributions under the Plan. That impact may be adverse to a Creditor or Equity Interest holder. The Debtor has attempted to structure the Plan to preserve any valuable tax attributes.

An analysis of federal income tax consequences of the Plan to Creditors, Equity Interest holders, and the Debtor requires a review of the Internal Revenue Code, the Treasury regulations promulgated thereunder, judicial authority and current administrative rulings and practice. The Plan and its related tax consequences are complex. Neither the Debtor nor the Debtor's counsel have requested a ruling from the Internal Revenue Service with respect to these matters. Accordingly, no assurance can be given as to the IRS's interpretation of the Plan.

THE TRANSACTIONS CONTEMPLATED BY THE CONFIRMATION OF THE PLAN MAY HAVE AN IMPACT ON THE TAX TREATMENT OF ANY CREDITOR OR INTEREST HOLDER. THAT IMPACT MAY BE ADVERSE TO THE CREDITOR OR INTEREST HOLDER. NOTHING HEREIN IS INTENDED TO BE ADVICE OR OPINION AS TO THE TAX IMPACT OF THE PLAN ON ANY INDIVIDUAL CREDITOR OR INTEREST HOLDER. EACH CREDITOR OR INTEREST HOLDER IS CAUTIONED TO OBTAIN INDEPENDENT AND COMPETENT TAX ADVICE PRIOR TO VOTING ON THE PLAN.

## ARTICLE XI.
## JURISDICTION OF THE COURT

### 11.1  General Retention of Jurisdiction

Until this Chapter 11 Case is closed, the Bankruptcy Court shall retain the fullest and most extensive jurisdiction permissible, including, without limitation, that necessary (a) to ensure that the purposes and intent of the Plan are carried out, (b) to enforce and interpret the terms and conditions of the Plan, and (c) to enter such orders or judgments including, without limitation, injunctions necessary to enforce the rights, title, and powers of the Debtor and/or the Reorganized Debtor.  Except as otherwise provided in the Plan, the Bankruptcy Court shall retain jurisdiction to hear and determine all Claims against and Equity Interests in the Debtor and to adjudicate and enforce all other causes of action that may exist on behalf of the Debtor.

### 11.2  Specific Purposes

Without limiting the effect of Section 11.1, the Bankruptcy Court shall retain jurisdiction after Confirmation to:

(a)      modify the Plan after entry of the Confirmation Order, pursuant to the provisions of the Plan, the Bankruptcy Code, and the Bankruptcy Rules;

(b)      correct any defect, cure any omission, reconcile any inconsistency, or make any other necessary changes or modifications in or to the Plan, or the Confirmation Order as may be necessary to carry out the purposes and intent of the Plan;

(c)      hear and determine any cause of action, and to enter and implement such orders as may be necessary or appropriate, to execute, interpret, implement, consummate, or enforce the Plan and the transactions contemplated thereunder;

(d)      hear and determine disputes arising in connection with the execution, interpretation, implementation, consummation, or enforcement of the Plan, and to enforce, including by specific performance, the provisions of the Plan;

(e)      hear and determine disputes arising in connection with the execution, interpretation, implementation, consummation, or enforcement of the settlement agreements or other agreements entered into by the Debtor during this Chapter 11 Case;

(f)      enter and implement orders or take such other actions as may be necessary or appropriate to restrain interference with the consummation or implementation of the Plan, including, without limitation, to issue, administer, and enforce injunctions, releases, assignments, transfers of property or property rights, or other obligations contained in the Plan and the Confirmation Order;

(g)      assure the performance by Reorganized Debtor of its obligations to make distributions under the Plan;

(h)      enter such orders or judgments, including injunctions, as necessary to enforce the title, rights, and powers of the Debtor, Reorganized Debtor, or the Plan;

(i)      hear and determine any and all adversary proceedings, applications, and contested matters, including any remands after appeal;

(j)      ensure that distributions to holders of Allowed Claims are accomplished as provided herein;

(k)      hear and determine any timely objections to or motions or applications concerning Claims or the allowance, classification, priority, compromise, setoff, estimation, or payment of any Claim, to the fullest extent permitted by the provisions of section 157 of title 28 of the United States Code;

(l)      enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, reversed, or vacated;

(m)      hear and determine any motions, contested matters or adversary proceedings involving taxes, tax refunds, tax attributes, tax benefits, and similar or related matters with respect to the Debtor and/or Reorganized Debtor arising on or prior to the Effective Date, arising on account of transactions contemplated by the Plan, or relating to the period of administration of the Case;

(n)      hear and determine all applications for the employment or compensation of Professionals and reimbursement of expenses under sections 330, 331, or 503(b) of the Bankruptcy Code or the Plan;

(o)      recover all assets of the Debtor and property of the Estate wherever located, including actions under chapter 5 of the Bankruptcy Code;

(p)      hear and determine any and all motions pending as of the Confirmation Date for the rejection, assumption, or assignment of Executory Contracts or unexpired leases and the allowance of any Claim resulting therefrom;

(q)      hear and determine such other matters and for such other purposes as may be provided in the Confirmation Order;

(r)      consider and act on the compromise and settlement of any Claim against, or Equity Interest in, the Debtor, including, without limitation, any disputes relating to any Administrative Claims or any Bar Date;

(s)      hear and determine all questions and disputes regarding title to the assets of the Debtor or its Estate;

(t)      to issue such orders in aid of execution of the Plan to the extent authorized by section 1142 of the Bankruptcy Code; and the court may issue such orders in aid of consummation of the Plan under sections 105 and 1142 of the Bankruptcy Code, including orders to authorize the Debtor (or such other party as may be designated by the Bankruptcy

Court) to deliver and execute, on behalf of the Lender, any documents evidencing the Restructured Loan or related agreements;

(u)     hear and determine any other matters related hereto, including the implementation and enforcement of all orders entered by the Bankruptcy Court in the Case; and

(v)     enter such orders as are necessary to implement and enforce any injunctions provided for in the Plan and Confirmation Order.

## ARTICLE XII.
## MISCELLANEOUS

### 12.1    Amendment or Modification of the Plan

The Plan may be amended or modified by the Debtor prior to the hearing on confirmation without notice or hearing and without an additional Disclosure Statement pursuant to section 1127(a) of the Bankruptcy Code and, to the extent applicable, Bankruptcy Rule 3019. Post-confirmation amendments or modifications of the Plan may be allowed by the Court under section 1127(b) of the Bankruptcy Code if the proposed amendment or modification is offered before the Plan has been substantially consummated. The sole right to amend or modify the Plan at any time shall be reserved to the Debtor.

### 12.2    Effective Date and Final Decree

The effective date will be the first Business Day that is ten (10) days after the Confirmation Date on which (a) no stay of the Confirmation Order is in effect; and (b) all conditions to effectiveness set forth in the Plan have been satisfied or waived in accordance with the terms of the Plan.  No payments to Creditors will be made prior to the Effective Date. Debtor intends to file a motion for entry of a final decree within six (6) months from the Effective Date.

**[REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK]**

Dated:  May 4, 2020

WC 2101 W BEN WHITE, LP,
Debtor

BY: WC BEN WHITE, LLC,
General Partner of the Debtor

 /s/ Natin Paul
By:  Natin Paul
     Its:  President


**FISHMAN JACKSON RONQUILLO PLLC**

 /s/ Mark H. Ralston
 Mark H. Ralston
 State Bar No. 16489460
 Fishman Jackson Ronquillo PLLC
 Three Galleria Tower
 13155 Noel Road, Suite 700
 Dallas, TX 75240
 Telephone: (972) 419-5544
 Facsimile: (972) 4419-5500
 E-mail: mralston@fjrpllc.com

 COUNSEL FOR DEBTOR WC 2101 W BEN WHITE,
 LP

## EXHIBIT A

**DEBTOR'S PLAN OF REORGANIZATION**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| WC 2101 W BEN WHITE, LP | § | Case No. 20-10182-tmd |
| | § | |

# DEBTOR'S CHAPTER 11 PLAN OF REORGANIZATION

DATED: May 4, 2020.

**FISHMAN JACKSON RONQUILLO PLLC**

 /s/ Mark H. Ralston

Mark H. Ralston
State Bar No. 16489460
Fishman Jackson Ronquillo PLLC
Three Galleria Tower
13155 Noel Road, Suite 700
Dallas, TX 75240
Telephone: (972) 419-5544
Facsimile: (972) 4419-5500
E-mail: mralston@fjrpllc.com

COUNSEL FOR DEBTOR WC 2101 W
BEN WHITE, LP

## TABLE OF CONTENTS

**ARTICLE I DEFINITIONS AND RULES OF INTERPRETATION** ..................................... 1
   1.01.   Defined Terms ......................................................................................... 1
   1.02.   Rules of Interpretation ............................................................................ 7
   1.03.   Computation of Time .............................................................................. 8
   1.04.   References to Currency ............................................................................ 8
   1.05.   Reference to the Debtor or the Reorganized Debtor .............................. 8
   1.06.   Controlling Document ............................................................................ 8

**ARTICLE II TREATMENT OF UNCLASSIFIED CLAIMS** .......................................... 8
   2.01.   Unclassified Claims ............................................................................... 8
   2.02.   Administrative Claims ........................................................................... 8
   2.03.   Statutory Fees ......................................................................................... 8
   2.04.   Priority Tax Claims ................................................................................ 9
   2.05.   Professional Fee Claims ......................................................................... 9
   2.06.   Post-Effective Date Fees and Expenses ................................................. 9

**ARTICLE III CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS** ............................................................................................................... 9
   3.01.   Introduction ............................................................................................ 9
   3.02.   Summary of Classification ..................................................................... 9
   3.03.   Designation of Unimpaired and Impaired Classes ............................... 10
   3.04.   Acceptance of the Plan ......................................................................... 10
   3.05.   Nonconsensual Confirmation ............................................................... 10
   3.06.   Classification and Treatment of Claims and Equity Interests ................ 10
   3.07.   Payments to U.S. Trustee ...................................................................... 12

**ARTICLE IV IMPLEMENTATION OF PLAN** ............................................................ 12
   4.01   Reorganized Debtor .............................................................................. 12
   4.02   Revesting of Assets ............................................................................... 12
   4.03   Vesting and Enforcement of Causes of Action ..................................... 13
   4.04   Preservation of Causes of Action .......................................................... 13
   4.05   The Reorganized Debtor's Obligations Under the Plan ......................... 13
   4.06   Exemption from Transfer Taxes ............................................................ 14

**ARTICLE V TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES** ..................................................................................................................... 14
   5.01.   Assumption or Rejection of Executory Contracts and Unexpired Leases ................. 14
   5.02.   Objections to Assumption of Executory Contracts and Unexpired Leases ............... 15
   5.03.   Payments Related to Assumption of Executory Contracts and Unexpired Leases ..... 15
   5.04.   Bar Date for Rejection Damages ........................................................... 15
   5.05.   Insurance Policies ................................................................................. 16

**ARTICLE VI DETERMINATION OF CLAIMS** .......................................................... 16
   6.01.   Objections to Claims ............................................................................ 16

6.02. Contingent Claims ................................................................................................ 16
6.03. Undeliverable/Returned Distributions .............................................................. 16
6.04. Distributions on Allowance or Disallowance of Disputed Claims ............................. 16
6.05. Reserve Pending Distributions ........................................................................... 17
6.06. De Minimis Distributions ................................................................................. 17
6.07. Additional Charges ........................................................................................... 17

**ARTICLE VII CONDITIONS PRECEDENT** ............................................................. 17
7.01. Conditions to Confirmation ............................................................................ 17
7.02. Conditions to Effectiveness .............................................................................. 18
7.03. Waiver of Conditions ........................................................................................ 18

**ARTICLE VIII JURISDICTION OF THE COURT** ................................................. 18
8.01. General Retention of Jurisdiction ..................................................................... 18
8.02. Specific Purposes .............................................................................................. 19

**ARTICLE IX EFFECT OF CONFIRMATION** ......................................................... 21
9.01. General ............................................................................................................... 21
9.02. Plan Injunction .................................................................................................. 21
9.03. Discharge of Claims ........................................................................................... 21
9.04. Exculpation ........................................................................................................ 22
9.05. Indemnification Obligations ............................................................................. 22
9.06. Payment to the United States Trustee ............................................................... 22
9.07. Post-Petition Reports and Payments to the United States Trustee ...................... 22
9.08. Retention of Claims and Interests .................................................................... 22
9.09. Setoffs ................................................................................................................ 23

**ARTICLE X NOTICES** ................................................................................................ 23
10.01. General ............................................................................................................... 23

**ARTICLE XI MISCELLANEOUS** .............................................................................. 23
11.01. Amendment or Modification to Plan ................................................................ 23
11.02. Correction of Plan ............................................................................................. 23
11.03. Revocation of Plan ............................................................................................ 23
11.04. Binding Effect .................................................................................................... 24
11.05. Notices ................................................................................................................ 24
11.06. Final Allowance ................................................................................................. 24
11.07. Consummation ................................................................................................... 24
11.08. Disbursing Agent ............................................................................................... 24
11.09. Further Authorization ........................................................................................ 24
11.10. Means of Cash Payment .................................................................................... 25
11.11. Plan Supplement ................................................................................................ 25
11.12. Severability of Plan Provisions ......................................................................... 25
11.13. Governing Law ................................................................................................... 25
11.14. Conflicts ............................................................................................................. 25
11.15. Entire Agreement ............................................................................................... 25

## INTRODUCTION

WC 2101 W Ben White, LP (the "**Debtor**"), the Debtor in Possession in this chapter 11 case, proposes the following Plan of Reorganization for the treatment of its outstanding claims and equity interests. Holders of Claims and Equity Interests should refer to the Disclosure Statement for a discussion of the Debtor's history, business, and assets as well as a summary and description of the Plan. The Debtor is the proponent of the Plan within the meaning of section 1129 of the Bankruptcy Code.

Subject to the restrictions on modifications set forth in section 1127 of the Bankruptcy Code, Bankruptcy Rule 3019, and Section 11.01 of this Plan, the Debtor reserves the right to alter, amend, or modify this Plan.

## ARTICLE I
## DEFINITIONS AND RULES OF INTERPRETATION

1.01. **Defined Terms**. Capitalized terms used in the Plan that are not defined in Article I but are defined in the Bankruptcy Code shall have the respective meanings specified in the Bankruptcy Code. The following terms used in the Plan shall have the respective meanings defined below:

As used in this Plan, the following terms have the following meanings:

"**Administrative Claim**" or "**Administrative Expense Claim**" means a Claim for any cost or expense of administration of the Chapter 11 Case Allowed pursuant to sections 503(b), 507(b) or 546(c)(2) of the Bankruptcy Code and entitled to priority pursuant to section 507(a)(1) of the Bankruptcy Code, including: (a) fees payable pursuant to 28 U.S.C. § 1930; (b) actual and necessary costs and expenses incurred in the ordinary course of the Debtor's business; (c) actual and necessary costs and expenses of preserving the Estate or administering this Chapter 11 Case; and (d) all Professional Fee Claims to the extent Allowed by Final Order pursuant to sections 330, 331, or 503 of the Bankruptcy Code .

"**Administrative Claims Bar Date**" means the first Business Day that is 30 days after the Confirmation Date.

"**Allowed**" means, in reference to a Claim or Equity Interest,  (a) a Claim or Equity Interest that has been allowed by a Final Order; or (b) with respect to any Claim against, or Equity Interest in, the Debtor: (i) (A) proof of which, request for payment of which, or application for allowance of which, was filed or deemed filed with the Bankruptcy Court on or before the Bar Date, the Administrative Claims Bar Date, the Professional Fee Bar Date, or the Rejection Damages Bar Date, as applicable, for filing proofs of claim or equity interest or requests for payment for Claims of that type against the Debtor or other applicable date established by order of the Bankruptcy Court, even if that date is after the Bar Date, the Administrative Claims Bar Date, the Professional Fee Bar Date, or the Rejection Damages Bar Date, as applicable; or (B) a Claim or Equity Interest that is allowed by the Debtor; (ii) listed as undisputed, liquidated, and non-contingent in the Schedules and as to which no objection to its allowance or motion to estimate for purposes of allowance has been interposed within the applicable period of limitation fixed by this Plan, the

1

Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court; and (iii) in each instance, a Claim or Equity Interest as to which no objection to its allowance or motion to estimate for purposes of allowance has been interposed within the applicable period of limitation fixed by this Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court or, as to which any such objection or motion has been interposed, to the extent allowed by a Final Order.  The term "Allowed," when used to modify a reference in this Plan to any Claim, Equity Interest, Class of Claims, or Class of Equity Interests, means a Claim or Equity Interest (or any Claim or Equity Interest in any Class) that is so Allowed.

"**Avoidance Action**" means causes of action arising under chapter 5 of the Bankruptcy Code, or under related state or federal statutes and common law, including, without limitation, fraudulent transfer and fraudulent conveyance laws, whether or not litigation has been commenced to prosecute such causes of actions.

"**Ballot**" means the form(s) distributed to holders of Impaired Claims and Impaired Equity Interests entitled to vote on the Plan on which to indicate their acceptance or rejection of the Plan.

"**Bankruptcy Code**" means title 11 of the United States Code, as amended from time to time and applicable to this Chapter 11 Case.

"**Bankruptcy Court**" or "**Court**" means the United States Bankruptcy Court for the Western District of Texas, Austin Division, or such other court as may have jurisdiction over this Chapter 11 Case.

"**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure, as amended and prescribed pursuant to 28 U.S.C. § 2075, applicable to this Chapter 11 Case.

"**Bar Date**" means the date or dates fixed by the Bankruptcy Court or by this Plan by which Persons asserting a Claim against, or Equity Interest in, the Debtor (except Administrative Claims, Professional Fee Claims, and Rejection Damages Claims) are required to file a proof of claim or equity interest or a request for payment or be forever barred from asserting a Claim against or Equity Interest in the Debtor or its property, from voting on this Plan, and from sharing in distributions under this Plan.

"**Business Day**" means any day other than a Saturday, Sunday, or Legal Holiday (as defined in Bankruptcy Rule 9006).

"**Cash**" means currency, checks drawn on a bank insured by the Federal Deposit Insurance Corporation, certified checks, money orders, negotiable instruments, and wire transfers of immediately available funds.

"**Chapter 11 Case**" or "**Case**" means this case under Chapter 11 of the Bankruptcy Code in which the Debtor is the Debtor and Debtor-in-possession, pending before the Bankruptcy Court.

"**Claim**" has the meaning assigned to such term by section 101(5) of the Bankruptcy Code.

"**Claim Objection Deadline**" means the first Business Day that is the latest of (i) 10 days after the Effective Date; or (ii) such other date as may be established by the Bankruptcy Court.

"**Class**" or "**Classification**" means the particular class designated in the Plan, pursuant to section 1122 and section 1129 of the Bankruptcy Code, into which the Claims of all Creditors have been segregated for purposes of voting and distributions.

"**Confirmation Date**" means the date the Bankruptcy Court enters the Confirmation Order.

"**Confirmation Hearing**" means the hearing held by the Bankruptcy Court to consider confirmation of the Plan pursuant to section 1129 of the Bankruptcy Code.

"**Confirmation Order**" means the order of the Bankruptcy Court confirming this Plan in accordance with the Bankruptcy Code. The Confirmation Order need not necessarily be a Final Order.

"**Contingent Claim**" means any Claim for which a proof of claim has been filed with the Bankruptcy Court that: (a) was not filed in a fixed amount, or has not accrued and depends on a future event that has not occurred and may never occur; and (b) has not been Allowed on or before the Confirmation Date.

"**Creditor**" has the meaning assigned to such term by Section 101(10) of the Bankruptcy Code.

"**Debtor**" shall have the meaning ascribed to it in the preamble herein.

"**Disallowed**" means a Claim or any portion of a Claim that has been disallowed, overruled, withdrawn or expunged by Final Order. The term "Disallowed," when used to modify a reference in this Plan to any Claim, Equity Interest, Class of Claims, or Class of Equity Interests, means a Claim or Equity Interest (or any Claim or Equity Interest in any Class) that is so disallowed.

"**Disclosure Statement**" means the Disclosure Statement for the Plan of Reorganization for the Debtor dated May 4, 2020, together with any supplements, amendments, or modifications thereto.

"**Disputed**" means (i) a Claim, Equity Interest or Administrative Expense Claim that is subject to a pending objection; or (ii) until the deadline in the Plan for filing objections to claims:

(a)     a claim for which a corresponding Claim has not been listed in the Debtor's Schedules or for which the corresponding Claim is listed in the Debtor's Schedules with a differing amount, with a differing classification, or as a disputed, contingent, or unliquidated Claim;

(b)     a Claim which the Debtor in good faith believes is held by a holder either (i) from which property is recoverable by the applicable Debtor pursuant to any of sections 542, 543, 550 or 553 of the Bankruptcy Code or (ii) that is a transferee of a transfer avoidable pursuant to sections 522(f), 522(h), 544, 545, 547, 548, 549 or 724(a) of the Bankruptcy Code unless the holder has paid the amount, or turned over any such property for which such holder is liable pursuant to the terms of sections 522(i), 542, 543, 550, or 553 of the Bankruptcy Code; and

(c)      in any event, a Claim which has been paid during the pendency of this Chapter 11 Case pursuant to an order of the Court allowing the payment of such pre-petition claim.

"**Disputed Claims Reserve**" shall have the meaning set forth in Section 6.05 hereof.

"**Distributions**" means a payment of Cash to the holders of Allowed Claims pursuant to the Plan.

"**Effective Date**" means the first Business Day that is fourteen (14) days after the Confirmation Date on which (a) no stay of the Confirmation Order is in effect; and (b) all conditions to effectiveness set forth in Section 7.02 of this Plan have been satisfied or waived in accordance with the terms of this Plan.

"**Entity**" shall have the meaning assigned to such term by Section 101(15) of the Bankruptcy Code.

"**Equity Interest**" means any equity interest in the Debtor represented by (i) any class or series of common or preferred stock, (ii) any membership interest; or (iii) any general or limited partnership interest issued before the Effective Date, and any warrants, options, or rights to purchase any common or preferred stock.

"**Estate**" means the estate for the Debtor created in this Chapter 11 Case pursuant to section 541 of the Bankruptcy Code.

"**Exculpated Party**" or "**Exculpated Parties**" means the Debtor, the Reorganized Debtor, the holders of Equity Interests and their agents, officers, directors, managers, employees, representatives, advisors, attorneys, affiliates, shareholders, or members, or any of their successors or assigns.

"**Executory Contract**" means any contract or agreement between the Debtor and any Person or entity pursuant to which a duty of performance remains on one or both sides.

"**Final Order**" means an order of a court: (a) to which the time to appeal, petition for writ of certiorari, or otherwise seek appellate review or to move for reargument, rehearing or reconsideration has expired and as to which no appeal, petition for writ of certiorari, or other appellate review, or proceedings for reargument, rehearing, or reconsideration shall then be pending; or (b) as to which any right to appeal, petition for certiorari, or move for reargument, rehearing, or reconsideration shall have been waived in writing by the party with such right; or (c) in the event that an appeal, writ of certiorari, or other appellate review or reargument, rehearing, or reconsideration thereof has been sought, which shall have been affirmed by the highest court to which such order was appealed, from which writ of certiorari or other appellate review or reargument, rehearing, or reconsideration was sought, and as to which the time to take any further appeal, to petition for writ of certiorari, to otherwise seek appellate review, and to move for reargument, rehearing, or reconsideration shall have expired; provided, however, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure or pursuant to section 1144 of the Bankruptcy Code, or any analogous rule under the Bankruptcy Rules, may be filed with respect to such order shall not cause such order not to be a Final Order.

"**Holder**" and, collectively, "**Holders**," means a Person or Entity legally or beneficially, as applicable, holding a Claim or Equity Interest.

"**Impaired**" means, when used with reference to a Claim or Equity Interest, a Claim or Equity Interest that is impaired within the meaning of section 1124 of the Bankruptcy Code.

"**Impaired Claim**" means a Claim classified in an Impaired Class.

"**Impaired Class**" means each of Classes 1 and 2 as set forth in Article III of the Plan.

"**Lender**" means BBVA USA.

"**Lender Action**" means a legal action brought by Debtor in which Debtor may assert potential claims and caused of action against Lender.

"**Lien**" has the meaning assigned to such term by section 101(37) of the Bankruptcy Code, except for a lien that has been avoided in accordance with sections 544, 545, 546, 547, 548, or 549 of the Bankruptcy Code or applicable state law.

"**Person**" means any individual, corporation, partnership, limited liability company, limited liability partnership, joint venture, association, joint-stock company, trust, unincorporated association or organization, governmental agency or associated political subdivision.

"**Petition Date**" means February 4, 2020, the date when the Chapter 11 Case was instituted by the Debtor filing its voluntary petition pursuant to chapter 11 of the Bankruptcy Code.

"**Plan**" means this Plan, either in its present form or as it may be amended, supplemented, or modified from time to time in accordance with the terms of this Plan, including, except where the context otherwise requires, all its annexed exhibits.

"**Plan Supplement**" means the compilation of documents and forms of documents, all of which may be amended, modified, replaced and/or supplemented from time to time, to be filed with the Bankruptcy Court on or before the date that is seven (7) days prior to the scheduled commencement of the Confirmation Hearing that are required in order to consummate the Plan, including but not limited to the forms and lists as specified in the Plan and Disclosure Statement.

"**Priority Tax Claim**" means any Claim of a governmental unit entitled to priority pursuant to section 507(a)(8) of the Bankruptcy Code.

"**Priority Secured Tax Claim**" means a Secured Claim of a governmental entity whose claim would be a Priority Tax Claim pursuant to sections 502(i) or 507(a) of the Bankruptcy Code if it was not a Secured Claim.

"**Professional**" means a Person: (a) employed in this Chapter 11 Case in accordance with an order of the Bankruptcy Court pursuant to sections 327, 328, 363, or 1103 of the Bankruptcy Code and to be compensated for services pursuant to r sections 327, 328, 329, 330, and 331 of the Bankruptcy Code or order of the Bankruptcy Court; or (b) for whom compensation and reimbursement has been Allowed by a Final Order pursuant to section 503(b) of the Bankruptcy Code.

"**Professional Fee Bar Date**" means the first Business Day that is 30 days after the Confirmation Date.

"**Professional Fee Claim**" means an Administrative Claim for compensation and reimbursement of expenses of a Professional rendered or incurred before the Effective Date submitted in accordance with sections 328, 330, 331, or 503(b) of the Bankruptcy Code.

"**Property**" shall mean the property owned by the Debtor, located at 2101 W. Ben White Boulevard in South Austin containing a retail shopping center..

"**Pro Rata**" means a proportionate share, such that the ratio of the consideration distributed on account of an Allowed Claim or Equity Interest in a Class to the amount of such Allowed Claim or Equity Interest is the same as the ratio of the amount of the consideration distributed on account of all Allowed Claims or Equity Interests in that Class to the amount of all Allowed Claims or Equity Interests in that Class.

"**Proof of Claim**" means a proof of Claim Filed against the Debtor in this Chapter 11 Case.

"**Refinance**" shall mean a refinance of the obligations to the Lender.

"**Reinstated**" or "**Reinstatement**" means (a) leaving unaltered the legal, equitable, and contractual rights to which a Claim entitles the Holder of such Claim so as to leave such Claim Unimpaired; or (b) notwithstanding any contractual provision or applicable law that entitles the Holder of a Claim to demand or receive accelerated payment of such Claim after the occurrence of a default: (i) curing any such default that occurred before or after the Petition Date, other than a default of a kind specified in section 365(b)(2) of the Bankruptcy Code or of a kind that section 365(b)(2) expressly does not require to be cured; (ii) reinstating the maturity (to the extent such maturity has not otherwise accrued by the passage of time) of such Claim as such maturity existed before such default; (iii) compensating the Holder of such Claim for any damages incurred as a result of any reasonable reliance by such Holder on such contractual provision or such applicable law; (iv) if such Claim arises from a failure to perform a nonmonetary obligation other than a default arising from failure to operate a nonresidential real property lease subject to section 365(b)(l)(A), compensating the Holder of such Claim (other than the Debtor or an insider) for any actual pecuniary loss incurred by such Holder as a result of such failure; and (v) not otherwise altering the legal, equitable, or contractual rights to which such Claim entitles the Holder.

"**Rejection Damages Bar Date**" means the date that is thirty (30) days after the entry of an order of the Bankruptcy Court authorizing rejection of the Executory Contracts or unexpired leases, which order may be the Confirmation Order.

"**Reorganized Debtor**" means the Debtor on and after the Effective Date.

"**Schedules**" means the schedules of assets and liabilities, the list of holders of interests, and the statements of financial affairs filed by the Debtor pursuant to section 521 of the Bankruptcy Code and Bankruptcy Rule 1007, as the schedules, list, and statements may have been or may be supplemented or amended from time to time.

"**Secured**" means any Claim (a) listed in the Schedules as a liquidated, non-contingent, and undisputed secured Claim; or (b) reflected in a proof of claim as a Secured Claim, secured by a Lien to the extent of the value of the collateral securing such Lien, as determined in accordance with section 506(a) of the Bankruptcy Code, or, if the Claim is subject to setoff pursuant to section 553 of the Bankruptcy Code, net of the setoff. The term "Secured," when used to modify a reference in this Plan to any Claim or Class of Claims means a Claim (or any Claim in any Class) that is so Secured.

"**Solicitation**" means the solicitation by the Debtor from Holders of Claims and Equity Interests entitled to vote on the Plan pursuant to section 1126(b) of the Bankruptcy Code.

"**Substantial Consummation**" shall mean the commencement of distribution pursuant to the Plan as contemplated by section 1101(c) of the Bankruptcy Code.

"**Statement of Financial Affairs**" means the Statement of Financial Affairs (and any amendments or supplements thereto) filed by the Debtor in this Chapter 11 Case.

"**Taxing Authorities**" shall mean the various local, state, and federal taxing authorities with jurisdiction regarding the property of the Debtor.

"**Unsecured**" means any Claim against the Debtor's Estate for which the holder has no security for the repayment thereof and for which the holder is not entitled to any priority under the Bankruptcy Code.  The term "Unsecured," when used to modify a reference in this Plan to any Claim or Class of Claims, means a Claim (or any Claim in any Class) that is so Unsecured.

"**U.S. Trustee**" means the Office of the United States Trustee for the Western District of Texas.

"**U.S. Trustee Fees**" means fees arising under 28 U.S.C. § 1930(a)(6).

"**Voting Deadline**" means [DATE], 2020.

"**Voting Record Date**" means [DATE], 2020.

    1.02.  **Rules of Interpretation**. Unless otherwise provided herein for purposes of the Plan: (a) whenever it is appropriate from the context, each term, whether stated in the singular or the plural, will include both the singular and the plural; (b) any reference in the Plan to a contract, instrument, release, or other agreement or document being in a particular form or on particular terms and conditions means that such document will be substantially in such form or substantially on such terms and conditions; (c) any reference in the Plan to an existing document or exhibit filed or to be filed means such document or exhibit, as it may have been or may be amended, modified, or supplemented pursuant to the Plan; (d) any reference to any Entity as a holder of a Claim includes that Entity's successors and assigns; (e) all references in the Plan to sections, Articles, and exhibits are references to sections, Articles, and exhibits of or to the Plan; (f) the words "herein," "hereof," "hereunder," "hereto" and others of similar import refer to the Plan in its entirety rather than to a particular portion of the Plan; (g) captions and headings to Articles and sections are inserted for convenience of reference only and are not intended to be a part of, or to affect the interpretation of, the Plan; and (h) the rules of construction set forth in section 102 of the Bankruptcy Code will apply.

1.03.    **Computation of Time**. In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) will apply.

1.04.    **References to Currency**. All references in the Plan to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided.

1.05.    **Reference to the Debtor or the Reorganized Debtor**.  Except as otherwise specifically provided in the Plan to the contrary, references in the Plan to the Debtor or the Reorganized Debtor shall mean the Debtor and the Reorganized Debtor, as applicable, to the extent the context requires.

1.06.    **Controlling Document**. In the event of an inconsistency between the Plan and the Disclosure Statement or any other order (other than the Confirmation Order) referenced in the Plan (or any exhibits, schedules, appendices, supplements or amendments to any of the foregoing, other than the Plan Supplement), the terms of the Plan shall control in all respects. In the event of an inconsistency between the Plan and the Plan Supplement, the terms of the relevant document in the Plan Supplement shall control (unless stated otherwise in such Plan Supplement document or in the Confirmation Order). In the event of an inconsistency between the Confirmation Order and the Plan, the Confirmation Order shall control.

## ARTICLE II
## TREATMENT OF UNCLASSIFIED CLAIMS

2.01.    **Unclassified Claims.**  As provided in section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims and Priority Tax Claims are not classified for purposes of voting on, or receiving distributions under, the Plan.  Holders of Administrative Expense Claims and Priority Tax Claims are not entitled to vote on this Plan but, rather, are treated separately in accordance with Sections 2.02 and 2.04 of this Plan and pursuant to section 1129(a)(9)(A) of the Bankruptcy Code.

2.02.    **Administrative Claims**. Each holder of an Allowed Administrative Claim (except any holder that agrees to a lesser or otherwise different treatment) shall be paid in full, in Cash, in full satisfaction of such Claim, on the later of the Effective Date or the date on which such Administrative Claim becomes an Allowed Claim, *provided, however*, that (a) Allowed Administrative Claims representing (1) post-petition liabilities incurred in the ordinary course of business by the Debtor or (2) post-petition contractual liabilities arising under loans or advances to the Debtor, whether or not incurred in the ordinary course of business, shall be paid in accordance with the terms and conditions of the particular transactions relating to such liabilities and any agreements relating thereto, and (b) Professional Fee Claims shall be paid on the later of (i) thirty (30) days after the Effective Date, or (ii) thirty (30) days following the date of a Final Order determining and Allowing such Claim as a Professional Fee Claim.

2.03.    **Statutory Fees**. On or before the Effective Date, Administrative Expense Claims for fees payable pursuant to 28 U.S.C. § 1930, as determined by the Bankruptcy Court at the Confirmation Hearing, will be paid in Cash equal to the Allowed amount of such Administrative Expense Claims. All fees payable pursuant to 28 U.S.C. § 1930 subsequent to the Confirmation Date will be paid by the Reorganized Debtor in accordance therewith until the entry of a Final Decree.

2.04.    **Priority Tax Claims**.   On the first business day of the month following the Effective Date, the Debtor shall commence making monthly payments on account of all Priority Tax Claims in an amount at least sufficient to meet the minimum payment requirements provided under section 1129(a)(9)(C) of the Bankruptcy Code, with subsequent payments made monthly thereafter.  In the event that any of the Property secured by the Secured Tax Claims is sold during the term of the Plan or if the Lender's secured debt is refinanced during the term of the Plan, the unpaid taxes secured by such Property shall be paid in full upon the sale of the Property or the refinancing of the Lender's secured debt, as applicable.

The Taxing Authorities shall retain all Liens until such taxes are paid in full.

2.05.    **Professional Fee Claims**. Unless otherwise ordered by the Bankruptcy Court, the Holders of Professional Fee Claims shall file their respective final fee applications for the allowance of compensation for services rendered and reimbursement of expenses incurred through the Effective Date by no later than the date set for the Confirmation Hearing reflecting fees and expenses incurred as of the end of the month preceding the date of the Confirmation Hearing with an estimate for the fees and expenses incurred from the end of such period until the Confirmation Hearing. If granted by the Bankruptcy Court, such Claim shall be paid in full in such amount as is Allowed by the Bankruptcy Court on the date such Professional Fee Claim becomes an Allowed Professional Fee Claim, or as soon as reasonably practicable thereafter. The Debtor shall be responsible for and timely pay all Allowed Professional Fee Claims in full.

2.06.    **Post-Effective Date Fees and Expenses**. Except as otherwise specifically provided in the Plan, from and after the Effective Date, the Debtor or Reorganized Debtor shall, in the ordinary course of business and without any further notice or application to or action, order, or approval of the Court, pay in Cash the reasonable, actual, and documented legal, professional, or other fees and expenses related to implementation of the Plan and consummation incurred on or after the Effective Date by the Professionals. Upon the Effective Date, any requirement that Professionals comply with sections 327 through 331, 363, and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Debtor or Reorganized Debtor may employ and pay any Professional in the ordinary course of business without any further notice to or action, order, or approval of the Court.

## ARTICLE III
## CLASSIFICATION AND TREATMENT OF CLAIMS
## AND EQUITY INTERESTS

3.01.    **Introduction**. This Plan places all Claims and Equity Interests, except unclassified Claims provided for in Article 2, in the Classes listed below.  Unless otherwise stated, a Claim or Equity Interest is placed in a particular Class only to the extent that it falls within the description of that Class, and is classified in any other Class to the extent that any portion thereof falls within the description of such other Class.

3.02.    **Summary of Classification**.   In accordance with section 1123(a)(1) of the Bankruptcy Code, all Claims and Equity Interests are placed in the Classes described below for all purposes, including voting on, confirmation of, and distributions under, this Plan as follows:

| Class No. | Class Description | Status | Voting Rights |
|---|---|---|---|
| Class 1 | Lender | Impaired | Entitled to Vote |
| Class 2 | Allowed Unsecured Claims | Impaired | Entitled to Vote |
| Class 3 | Allowed Equity Interests | Unimpaired | Not Entitled to Vote |

3.03.  **Designation of Unimpaired and Impaired Classes**.  Classes 1 and 2 are impaired.

3.04.  **Acceptance of the Plan**.  An impaired Class of Creditors shall have accepted the Plan if the Plan is accepted by at least two-thirds in amount and more than one-half in number of the Allowed Claims or such Class that have accepted or rejected the Plan. Any impaired Class of Creditors in which no member votes to accept or reject the Plan will be deemed to have accepted the Plan.

3.05.  **Nonconsensual Confirmation**.  In the event any impaired Class fails to accept the Plan, in accordance with section 1129(a) of the Bankruptcy Code, the Debtor, as the Plan proponent, reserves the right to request that the Bankruptcy Court confirm the Plan in accordance with section 1129(b) of the Bankruptcy Code.

3.06.  **Classification and Treatment of Claims and Equity Interests**.

3.06.1  Class 1 – Lender.

3.06.1.1  The Lender's Allowed Claim[1] shall be paid at the election of the Debtor pursuant to one or more of the scenarios set forth below. The Debtor reserves the right to escrow proceeds to the extent there is still a dispute as to Lender's secured claim or in connection with a Lender Action.  The scenarios include, (a) cash proceeds from leasing, (b) cash proceeds from refinance, or (c) cash proceeds from a sale.

**3.06.1.1.1.  Cash From Proceeds of Leasing**

(a)  The Debtor currently generates sufficient cash flow from rental income to commence the regular payment of interest to Lender, and Debtor commenced the payment of contractual non-default interest as of the date hereof (May 4, 2020). Debtor intends to continue to use the proceeds of such rental income to pay the Lender any required payments, as well as any expenses as approved under any Cash Collateral Agreement with Lender and/or Cash Collateral Order entered by the Bankruptcy Court.  Beginning on the 1st day of the month after the Effective Date, Debtor will pay to Lender interest monthly interest-

---

[1] The Debtor reserves the right to contest the amount asserted by the Lender, the extent, priority and validity of its liens and to assert causes of action for damages.

only payments at three and one-quarter percent (3.25%) or such other amount as is determined by the Court. All remaining principal, pre-Effective Date interest, and costs will be due and payable on June 30, 2021, or such other date as determined by the Court.

### 3.06.1.1.2.    Cash From Proceeds of Refinancing or Sale

(a)    The secured claim of the Lender will be paid from cash proceeds from the refinancing or sale of all or a portion of the Property

(b)    Debtor may, consistent with section 1123(a)(5)(D) of the Bankruptcy Code, market and sell any or all of the Property.  In the event of such a sale, Lender will receive the net proceeds from the sale of all or a portion of the Property after payment of customary closing costs (including broker's fees, title insurance fees, and other typical closing costs and taxes attributable to the Property) to be applied as determined by the Court until satisfied in full.

(c)    Reorganized Debtor shall be entitled to close the sale of the Property and the Lender shall be required to release its lien provided that the sale provides either for the payment of the portion of Lender's (a) allowed claim in full, or (b) if Lender's claim is not allowed, then the payment of the undisputed portion of Lender's claim in full, with additional proceeds sufficient to pay any disputed portion of Lender's claim to be held in the registry of the Bankruptcy Court, in agreed-upon escrow account, or as otherwise ordered by the Bankruptcy Court. To the extent a Lender Action is pending, the Bankruptcy Court shall determine how much of the sale or refinance proceeds will be held in escrow until the resolution by final order or judgment in the Lender Action.

In the event of a monetary default under these provisions, Lender shall provide Reorganized Debtor written notice stating the basis for the default (the "**Default Notice**") and Reorganized Debtor shall have five (5) business days from the Default Notice to cure said default (the "**Cure Period**").  If such default is not cured within the Cure Period, Lender shall be entitled to pursue its available remedies under the Loan Documents.  Lender shall only be required to provide Reorganized Debtor three (3) such Default Notices and Cure Periods.  Lender may be paid in whole or in part at any time without penalty from the proceeds of the Sale or from any Refinancing obtained by or on behalf of the Debtor or the Reorganized Debtor.  Notwithstanding same, the Reorganized Debtor reserves any and all rights to contest the validity of any such default declared by the Lender and the Bankruptcy Court shall retain jurisdiction to hear such disputes.

> (d)   Lender may be paid in whole or in part at any time without penalty from the proceeds of the Sale or from any Refinancing obtained by or on behalf of the Debtor or the Reorganized Debtor.

### 3.06.1.1.3.   Provision Applicable to Foregoing

> (a)   To the extent of any dispute regarding the Lender's Allowed Claim, that may be adjudicated and determined in a Court of competent jurisdiction, including the Bankruptcy Court.

3.06.1.2   This Class is impaired.

3.06.2   Class 2 – Unsecured Claims.

> 3.06.2.1   Each holder of an Allowed Unsecured Claim[2] shall receive payment in full of the allowed amount of each holder's claim, to be paid thirty (30) days following payment of the Class 1 claim.

> 3.06.2.2   This Class is impaired.

3.06.3   Class 3 – Equity Interests.

> 3.06.3.1   Each holder of an Equity Interest shall retain such interests, but shall not receive any distribution on account of such interests until Class 1 and Class 2 are paid in full.

> 3.06.3.2   This Class is not impaired.

3.07.   **Payments to U.S. Trustee**.  Debtor shall make the payments and file all reports required by 28 U.S.C. § 1930(a)(6) unless and until this Chapter 11 Case is closed, converted, or dismissed.

### ARTICLE IV
### IMPLEMENTATION OF PLAN

4.01   **Reorganized Debtor**.  From and after the Effective Date, Debtor will exist as the Reorganized Debtor.  Except as otherwise provided in the Plan, the Reorganized Debtor will remain in possession and ownership of all of the assets of Debtor and shall operate them in its best business judgment without further oversight of the Bankruptcy Court.

4.02   **Revesting of Assets**.  Except as otherwise provided in the Plan, all Property of the Estate will revest in the Reorganized Debtor, subject only to (1) the Liens provided for in the Plan; and (2) the obligations of the Reorganized Debtor as set forth in the Plan and Confirmation Order - provided, however, that if this case is converted to a liquidation proceeding under chapter 7 of the Bankruptcy Code, then all of the Reorganized Debtor's assets will revest in the chapter 7 estate. From and after the Effective Date, the Reorganized Debtor may operate its business and may use,

---

[2] The Debtor reserves the right to object to any claims that it contests.

acquire and dispose of property without the supervision of the Bankruptcy Court, free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules, subject to the terms and conditions of this Plan.

4.03    **Vesting and Enforcement of Causes of Action**. Any and all claims and causes of action, shall vest in the Reorganized Debtor on the Effective Date, and the Reorganized Debtor shall be the only Entity entitled to pursue such claims or causes of action.

4.04    **Preservation of Causes of Action**. In accordance with section 1123(b) of the Bankruptcy Code, the Reorganized Debtor shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action, whether arising before or after the Petition Date, including any actions specifically enumerated in the Plan Supplement, and such rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date. The Reorganized Debtor may pursue such Causes of Action, as appropriate, in accordance with the best interests of the Reorganized Debtor. No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Causes of Action against it as any indication that the Debtor or the Reorganized Debtor will not pursue any and all available Causes of Action against it. The Debtor or the Reorganized Debtor, as applicable, expressly reserve all rights to prosecute any and all Causes of Action against any Entity, except as otherwise expressly provided in the Plan, unless any Causes of Action against an Entity are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Court order. For the avoidance of doubt, in no instance will any Cause of Action preserved pursuant to this Article include any claim or Cause of Action with respect to, or against, a Released Party.

In accordance with section 1123(b)(3) of the Bankruptcy Code, except as otherwise provided herein, any Causes of Action that the Debtor may hold against any Entity shall vest in the Reorganized Debtor. The Reorganized Debtor, through its authorized agents or representatives, shall retain and may exclusively enforce any and all such Causes of Action. The Reorganized Debtor shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action, and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Court.

4.05    **The Reorganized Debtor's Obligations Under the Plan**.  The Reorganized Debtor shall perform all of the obligations under the Plan, including obligations to pay or otherwise satisfy the Allowed Claims. All Cash necessary for the Reorganized Debtor to make payments pursuant to the Plan shall be obtained from rental receipts, proceeds of refinance, proceeds of a sale, or from Court approved financing, including from an affiliate of the Debtor.

(a)    From and after the Effective Date, the Reorganized Debtor shall, among other things:

(1)    administer the Plan and take all steps and execute all instruments and documents necessary to effectuate the Plan;

(2)     resolve Disputed Claims, and administer the Claims allowance and disallowance processes as set forth in the Plan, including, without limitation, objecting to, prosecuting, litigating, reconciling, settling and resolving Claims and Disputed Claims in accordance with the Plan;

(3)     make decisions regarding the retention, engagement, payment and replacement of professionals, employees and consultants;

(4)     administer the Distributions under the Plan, including (i) making Distributions in accordance with the terms of the Plan and (ii) establishing and maintaining the various reserves;

(5)     exercise such other powers as necessary or prudent to carry out the provisions of the Plan;

(6)     file appropriate tax returns; and

(7)     take such other actions as may be necessary or appropriate to effectuate this Plan.

(b)     Following the Effective Date the Reorganized Debtor may pay its post Effective Date operating expenses in the ordinary course of its business without further notice or orders of this Court.

4.06    **Exemption from Transfer Taxes**.  Pursuant to section 1146(c) of the Bankruptcy Code, the issuance, transfer, or exchange of notes or equity securities under the Plan or the making or delivery of any deed or other instrument or transfer under, in furtherance of, or in connection with the Plan, including without express or implied limitation, any transfers to or by the Reorganized Debtor, shall not be subject to any transfer, sales, stamp or other similar tax, and the Confirmation Order will direct the appropriate state or local governmental officials or agents to forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the forgoing instruments or other documents without the payment of any such tax or governmental assessment.

## ARTICLE V
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

5.01.   **Assumption or Rejection of Executory Contracts and Unexpired Leases.**  On the Effective Date, except as otherwise provided in the Plan, any unexpired lease or Executory Contract that has not been previously assumed or rejected by the Debtor pursuant to an order of the Bankruptcy Court shall be deemed rejected by the Debtor under sections 365(a) and 1123 of the Bankruptcy Code. *Debtor will file a list of contracts to be assumed prior to date of the Confirmation Hearing*. Entry of the Confirmation Order shall constitute approval of such assumptions or rejections, as the case may be (as such lists may be amended, supplemented or modified on or before the Confirmation Date), pursuant to sections 365(a) and 1123 of the Bankruptcy Code. Any motions to assume Executory Contracts and unexpired leases pending on the Effective Date shall be subject to approval by the Bankruptcy Court on or after the Effective Date by a Final Order.

5.02. **Objections to Assumption of Executory Contracts and Unexpired Leases**. To the extent that any party to an Executory Contract or unexpired lease identified for assumption, or any other party in interest, (a) asserts arrearages or damages pursuant to section 365(b)(1) of the Bankruptcy Code in an amount different from the amount, if any, set forth in the Schedules or otherwise asserted by the Debtor, (b) has any objection to the proposed adequate assurance of future performance, if required, or (c) has any other objection to the proposed assumption, cure, or assignment of a particular Executory Contract or unexpired lease on the terms and conditions provided for herein, all such asserted arrearages and any other objections shall be filed and served within the same deadline and in the same manner established for filing objections to the Plan.

Failure to assert any arrearages different from the amount set forth in the Schedules (or the exhibits thereto) or otherwise asserted by the Debtor, or to file an objection within the time period set forth above, shall constitute consent to the assumption, cure, and assignment on the terms provided for herein, including acknowledgment that (a) the Debtor (or its assignee(s)) has provided adequate assurance of future performance, if required, (b) the amount identified for "cure," if any, is the amount necessary to compensate for any and all outstanding defaults or actual pecuniary loss under the Executory Contract or unexpired lease to be assumed, and (c) no other defaults exist under such Executory Contract or unexpired lease.

If an objection to assumption and assignment is filed based upon lack of adequate assurance of future performance or otherwise, and the Court determines that the Debtor cannot assume the Executory Contract or unexpired lease either as proposed or as may be proposed pursuant to a modified proposal submitted by the Debtor, then the unexpired lease or Executory Contract shall automatically thereupon be deemed to have been rejected.

5.03. **Payments Related to Assumption of Executory Contracts and Unexpired Leases**. Any monetary defaults, including claims for actual pecuniary loss, under each Executory Contract and unexpired lease to be assumed under the Plan shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the cure amount, if any, as otherwise agreed by the parties or as ordered by the Bankruptcy Court, in Cash within 90 days following the Effective Date, or on such other terms as may be agreed to by the parties to such Executory Contract or unexpired lease. In the event of a dispute regarding (a) the amount of any cure or pecuniary loss payment, (b) the ability of Reorganized Debtor to provide adequate assurance of future performance under the contract or lease to be assumed, if required, or (c) any other matter pertaining to assumption, the cure or pecuniary loss payments required by section 365(b)(1) of the Bankruptcy Code shall be made within a reasonable time following entry of a Final Order resolving the dispute and approving assumption.

5.04. **Bar Date for Rejection Damages**. If the rejection of an Executory Contract or unexpired lease pursuant to this Article gives rise to a Claim by the other party or parties to such contract or lease, such Claim, to the extent that it is timely filed and is an Allowed Claim, shall be classified in Class 2; provided, however, that the Unsecured Claim arising from rejection shall be forever barred and shall not be enforceable against the Debtor, Reorganized Debtor, their successors or Property, unless a proof of Claim is Filed and served on the Reorganized Debtor within 30 days after the entry of an order of the Bankruptcy Court authorizing rejection of the Executory Contract or unexpired lease, which order may be the Confirmation Order.

5.05.  **Insurance Policies**.  Notwithstanding anything contained in the Plan of Reorganization to the contrary, unless specifically rejected by order of the Bankruptcy Court, all of the Debtor's insurance policies and any agreements, documents or instruments relating thereto, are treated as Executory Contracts under the Plan of Reorganization and will be assumed pursuant to the Plan of Reorganization, effective as of the Effective Date.

## ARTICLE VI
## DETERMINATION OF CLAIMS

6.01.  **Objections to Claims.**  Notwithstanding the occurrence of the Effective Date, and except as to any Claim that has been Allowed under the Plan before the Effective Date, the Reorganized Debtor may object to the allowance of any Claim against the Debtor or seek estimation of any Claim on any grounds permitted by the Bankruptcy Code.  All objections to Claims must be brought by filing the appropriate pleading in the Bankruptcy Court before the first Business Day that is 60 days after the Effective Date, but the Bankruptcy Court may approve a later date on the Reorganized Debtor's motion filed (but not necessarily heard) before the first Business Day that is 60 days after the Effective Date.

6.02.  **Contingent Claims**.  Until a Contingent Claim becomes an Allowed Claim or is Disallowed, the Claim will be treated as a Disputed Claim for all purposes under this Plan. The holder of a Contingent Claim will be entitled to a distribution under this Plan only when the Contingent Claim becomes an Allowed Claim. Any Contingent Claim for reimbursement or contribution held by a Person that may be liable with the Debtor is Disallowed as of the Effective Date if: (a) that Creditor's Claim is Disallowed; (b) the Claim for reimbursement or contribution is contingent as of the Effective Date; or (c) that Person asserts a right of subrogation to the rights of the Creditor under section 509 of the Bankruptcy Code.

6.03.  **Undeliverable/Returned Distributions**.  Any Distribution to be made to a Creditor will be sent to that Creditor at (i) the address set forth on the proof of Claim filed for such Creditor, or (ii) if no proof of Claim is filed, at the address set forth on the Debtor's Schedules. In the event that a Distribution as herein provided is returned as undeliverable, or a Distribution is returned on account of there being no payment due to the affected Creditor, the Reorganized Debtor shall hold such Distribution for the affected Creditor for a period of 60 days following the Date of that Distribution for the benefit of the Creditor. If the affected Creditor does not make a demand, in writing, for such unclaimed Distribution within the 60-day period, the Creditor shall forfeit all entitlement to the Distribution, and the Distribution shall revert to the Reorganized Debtor.

6.04.  **Distributions on Allowance or Disallowance of Disputed Claims**.  No Distributions will be made to any holder of a Claim unless and until the Claim becomes an Allowed Claim. If a Claim is not an Allowed Claim as of the Effective Date, Distributions on account of that Claim will commence only when the Claim becomes an Allowed Claim after the Effective Date or as otherwise specifically provided in this Plan. If a Disputed Claim becomes an Allowed Claim, the Reorganized Debtor will make a Distribution in accordance with the terms of this Plan applicable to Claims of the Class in which that Claim resides.

6.05.    **Reserve Pending Distributions.**  With respect to any Disputed Claims in Class 2, on a periodic basis and at the same time as the Reorganized Debtor makes Distributions to the holders of Allowed Claims in such class hereunder, the Reorganized Debtor shall set aside an amount equal to the amount the holder of the Disputed Claim would have received had such Disputed Claim been an Allowed Claim as of the Effective Date (the "**Disputed Claims Reserve**").  Such Disputed Claims Reserve shall be released to the holder of a Disputed Claim within ten (10) days after it becomes an Allowed Claim so that such holder will receive all accrued but unmade payments as of such date so that such holder will have received equal treatment to holders of Allowed Claims.  For purposes of the Disputed Claims Reserve, the Reorganized Debtor shall reserve based upon the amount reflected in the books and records of the Debtor.

6.06.    **De Minimis Distributions**.  Any other provision of the Plan notwithstanding, the Reorganized Debtor shall not be required to make Distributions to holders of Allowed Claims in an amount less than $50.00 (unless such Allowed Claim is less than $50.00).  Cash allocated to an Allowed Claim but withheld from Distribution pursuant to this subsection shall be held by the Reorganized Debtor for the account of and future Distribution to the holder of such Allowed Claim.

6.07.    **Additional Charges.**  Except as may be expressly provided in the Plan or allowed by Final Order of the Bankruptcy Court, no interest, penalty, attorney's fee or late charge shall be allowed or paid with respect to any Claim.

### ARTICLE VII
### CONDITIONS PRECEDENT

7.01.    **Conditions to Confirmation.**  The following are conditions precedent to confirmation of this Plan, each of which must be satisfied or waived by the Debtor:

(a)    **Approval of Disclosure Statement**.  The Bankruptcy Court approves the Disclosure Statement.

(b)    **Form of Confirmation Order**.  The Bankruptcy Court enters the Confirmation Order in form and substance reasonably acceptable to the Debtor.

(c)    **Form of Documents**.  The Plan, the Plan Supplement and all schedules, documents, supplements and exhibits relating to this Plan shall have been filed in form and substance acceptable to the Debtor and the Lender.

(d)    **Substance of Confirmation Order**.  The Confirmation Order contains the following:

(1)    the provisions of the Confirmation Order are nonseverable and mutually dependent;

(2)    approval of the assumption, rejection, or assumption and assignment of the specified Executory Contracts and unexpired leases;

(3)    all Executory Contracts or unexpired leases assumed and assigned by the Debtor during this Chapter 11 Case or under this Plan remain in full force

17

and effect for the benefit of the Reorganized Debtor or any assignees of such contracts or leases, as the case may be, notwithstanding any provision in any such contract or lease (including those described in section 365(b)(2) and (f) of the Bankruptcy Code) that prohibits or conditions such assignment or transfer or that enables, permits, or requires termination of such contract or lease;

(4)     approval of all documents included in the Plan Supplement;

(5)     the Reorganized Debtor is released and discharged from all obligations arising under all Executory Contracts and unexpired leases rejected by the Debtor during this Chapter 11 Case or under this Plan;

(6)     except as otherwise provided in the Plan, the Reorganized Debtor is discharged in accordance with Section 9.03 of this Plan; and

(7)     retention of jurisdiction of the Bankruptcy Court to the fullest extent permissible by applicable law, and at least to the extent contemplated by Article VIII of this Plan.

7.02.   **Conditions to Effectiveness**.   The following are conditions precedent to the occurrence of the Effective Date; provided, however, the Debtor may waive one or more of such conditions whereupon the Effective Date shall occur without further action by any Person:

(a)     the Confirmation Date occurs;

(b)     all documents necessary to effectuate the Plan as contained in the Plan Supplement shall have been executed and delivered (or approved by the Court), and all conditions precedent thereto shall have been satisfied (other than the occurrence of the Effective Date);

(c)     all authorizations and/or consents required, if any, in connection with the consummation of this Plan shall have been obtained; and

(d)     the Confirmation Order is not stayed pursuant to an order issued by a court of competent jurisdiction.

7.03.   **Waiver of Conditions**.   The Debtor may waive any condition to confirmation or the Effective Date, in whole or in part, at any time without notice, an order of the Bankruptcy Court, or any further action other than proceeding to confirmation and consummation of this Plan.

## ARTICLE VIII
## JURISDICTION OF THE COURT

8.01.   **General Retention of Jurisdiction**.  Until this Chapter 11 Case is closed, the Bankruptcy Court shall retain the fullest and most extensive jurisdiction permissible, including, without limitation, that necessary (a) to ensure that the purposes and intent of the Plan are carried out, (b) to enforce and interpret the terms and conditions of the Plan, and (c) to enter such orders or judgments

including, without limitation, injunctions necessary to enforce the rights, title, and powers of the Debtor and/or the Reorganized Debtor. Except as otherwise provided in the Plan, the Bankruptcy Court shall retain jurisdiction to hear and determine all Claims against and Equity Interests in the Debtor and to adjudicate and enforce all other causes of action that may exist on behalf of the Debtor. Nothing contained herein shall prevent the Reorganized Debtor from taking such action as may be necessary in the enforcement of any cause of action that each has or may have and that may not have been enforced or prosecuted by the Debtor, which cause of action shall survive entry of the Confirmation Order and occurrence of the Effective Date and shall not be affected thereby except as specifically provided herein.

8.02. **Specific Purposes**. Without limiting the effect of Section 8.01, the Bankruptcy Court shall retain jurisdiction after Confirmation to:

(a) modify the Plan after entry of the Confirmation Order, pursuant to the provisions of the Plan, the Bankruptcy Code, and the Bankruptcy Rules;

(b) correct any defect, cure any omission, reconcile any inconsistency, or make any other necessary changes or modifications in or to the Plan, or the Confirmation Order as may be necessary to carry out the purposes and intent of the Plan;

(c) hear and determine any cause of action, and to enter and implement such orders as may be necessary or appropriate, to execute, interpret, implement, consummate, or enforce the Plan and the transactions contemplated thereunder;

(d) hear and determine disputes arising in connection with the execution, interpretation, implementation, consummation, or enforcement of the Plan, and to enforce, including by specific performance, the provisions of the Plan;

(e) hear and determine disputes arising in connection with the execution, interpretation, implementation, consummation, or enforcement of the settlement agreements or other agreements entered into by the Debtor during this Case.

(f) enter and implement orders or take such other actions as may be necessary or appropriate to restrain interference with the consummation or implementation of the Plan, including, without limitation, to issue, administer, and enforce injunctions, releases, assignments, transfers of property or property rights, or other obligations contained in the Plan and the Confirmation Order;

(g) assure the performance by Reorganized Debtor of its obligations to make distributions under the Plan;

(h) enter such orders or judgments, including injunctions, as necessary to enforce the title, rights, and powers of the Debtor, Reorganized Debtor, or the Plan;

(i) hear and determine any and all adversary proceedings, applications, and contested matters, including any remands after appeal;

(j)     ensure that distributions to holders of Allowed Claims are accomplished as provided herein;

(k)     hear and determine any timely objections to or motions or applications concerning Claims or the allowance, classification, priority, compromise, setoff, estimation, or payment of any Claim, to the fullest extent permitted by the provisions of section 157 of title 28 of the United States Code;

(l)     enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, reversed, or vacated;

(m)     hear and determine any motions, contested matters or adversary proceedings involving taxes, tax refunds, tax attributes, tax benefits, and similar or related matters with respect to the Debtor and/or Reorganized Debtor arising on or prior to the Effective Date, arising on account of transactions contemplated by the Plan, or relating to the period of administration of the Case;

(n)     hear and determine all applications for the employment or compensation of Professionals and reimbursement of expenses pursuant to sections 330, 331, or 503(b) of the Bankruptcy Code or the Plan;

(o)     recover all assets of the Debtor and Property of the Estate wherever located, including actions under chapter 5 of the Bankruptcy Code;

(p)     hear and determine any and all motions pending as of the Confirmation Date for the rejection, assumption, or assignment of Executory Contracts or unexpired leases and the allowance of any Claim resulting therefrom;

(q)     hear and determine such other matters and for such other purposes as may be provided in the Confirmation Order;

(r)     consider and act on the compromise and settlement of any Claim against, or Equity Interest in, the Debtor, including, without limitation, any disputes relating to any Administrative Claims or any Bar Date;

(s)     hear and determine all questions and disputes regarding title to the assets of the Debtor or its Estate;

(t)     To issue such orders in aid of execution of the Plan to the extent authorized by section 1142 of the Bankruptcy Code; and the court may issue such orders in aid of consummation of the Plan pursuant to sections 105 and 1142 of the Bankruptcy Code, including orders to authorize the Debtor (or such other party as may be designated by the Bankruptcy Court) to deliver and execute, on behalf of the Lender, any documents evidencing the Restructured Loan or related agreements;

(u)     hear and determine any other matters related hereto, including the implementation and enforcement of all orders entered by the Bankruptcy Court in the Case;  and

(v)     enter such orders as are necessary to implement and enforce any injunctions provided for in the Plan and Confirmation Order.

## ARTICLE IX
## EFFECT OF CONFIRMATION

9.01.   **General.**  On the Effective Date, the provisions of this Plan shall be binding on the Debtor, any person or entity acquiring property under the Plan, and any Creditor of the Debtor, whether or not such Creditor has accepted the Plan.

9.02.   **Plan Injunction**.  Except as specifically set forth in the Plan, from and after the Confirmation Date, all holders of Claims against and Equity Interests in the Debtor are permanently restrained and enjoined (i) from commencing or continuing in any manner, any action or other proceeding of any kind with respect to any such Claim or Equity Interests against the Debtor or the Estate, (ii) from enforcing, attaching, collecting, or recovering by any manner or means, any judgment, award, decree, or order against the Debtor or the Estate, (iii) from creating, perfecting, or enforcing any encumbrance of any kind against the Debtor or the Estate, (iv) from asserting any setoff, right of subrogation, or recoupment of any kind against any obligation due the Debtor, and (v) from performing any act, in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan; provided, however, that each holder of a Disputed Claim or Disputed Equity Interest may continue to prosecute its proof of Claim or Equity Interest in the Bankruptcy Court and all holders of Allowed Claims and Equity Interests shall be entitled to enforce their rights under the Plan.

9.03.   **Discharge of Claims**.  Except as otherwise provided in the Plan, the rights afforded in the Plan and the payments and distributions to be made thereunder are in complete exchange for, and in full satisfaction and release of, all existing Claims, debts and obligations of any kind, nature or description whatsoever of or against the Debtor or any of its assets or property to the fullest extent permitted pursuant to section 1141 of the Bankruptcy Code.  Upon the Effective Date, and except as otherwise provided in the Plan, all existing Claims against the Debtor and the Reorganized Debtor shall be and shall be deemed to be discharged. Subject to the provisions of the Plan, all holders of Claims or Equity Interests shall be precluded from asserting against the Debtor, or any of its assets or property, any other or further Claim based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date, whether or not such holder filed a proof of Claim or proof of Equity Interest.  Subject to the provisions of the Plan, upon the Effective Date, the Debtor shall be deemed discharged and released from any and all Claims, including, but not limited to, demands and liabilities that arose before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not (i) a proof of Claim or Equity Interest based upon such obligation is filed or deemed filed pursuant to section 501 of the Bankruptcy Code; (ii) a Claim or Equity Interest based upon such debt is Allowed pursuant to section 502 of the Bankruptcy Code; or (iii) the holder of a Claim or Equity Interest based upon such debt has accepted the Plan. Except as provided herein, the Confirmation Order shall be a judicial determination of discharge of all liabilities of the Debtor and the Reorganized Debtor.  In accordance with section 524 of the Bankruptcy Code, the discharge provided for hereunder shall void any judgment against the Debtor to the extent it relates to a Claim discharged, and operates as an injunction against the prosecution of any action against the Debtor or its Property to the extent it relates to a discharged Claim.

9.04. **Exculpation**.

(a)     None of the Exculpated Parties shall have or incur any liability to any Person or any of their respective agents, employees, representatives, advisors, attorneys, affiliates, shareholders, or members, or any of their successors or assigns, for any act or omission in connection with, relating to, or arising out of, this Chapter 11 Case, the Disclosure Statement, the transactions contemplated by or described in the Plan or Disclosure Statement, the formulation, negotiation, or implementation of this Plan, the pursuit of Confirmation of this Plan, the Confirmation of this Plan, the consummation of this Plan, or the administration of this Plan or the property to be distributed under this Plan, save and except the obligation of the Reorganized Debtor to timely make the payments called for hereunder.

(b)     Notwithstanding any other provisions of this Plan, no Person, no Person's agents, directors, managers, officers, employees, representatives, advisors, attorneys, affiliates, shareholders, or member and no Person's successors or assigns shall have any right of action against any of the Exculpated Parties for any act or omission in connection with, relating to, or arising out of, this Chapter 11 Case, the Disclosure Statement, the transactions contemplated by or described in the Plan or Disclosure Statement, the formulation, negotiation, or implementation of this Plan, the pursuit of Confirmation of this Plan, the Confirmation of this Plan, the consummation of this Plan, or the administration of this Plan or the property to be distributed under this Plan, save and except the obligation of the Reorganized Debtor to timely make the payments called for hereunder.

9.05. **Indemnification Obligations**.  Nothing in this Plan shall diminish or impair the enforceability of any obligation of the Debtor to indemnify, reimburse or limit the liability of any Person, including but not limited to any officer or director of the Debtor, or any agent, Professional or financial advisor, relating to any acts or omissions occurring subsequent to the Petition Date, and such obligations shall be assumed by the Reorganized Debtor.

9.06. **Payment to the United States Trustee**.  In accordance with section 1129(a)(12) of the Bankruptcy Code and 28 U.S.C. § 1930, the Reorganized Debtor shall on the Confirmation Date pay all fees then due to the United States Trustee.

9.07. **Post-Petition Reports and Payments to the United States Trustee**.  On the Confirmation Date, the Debtor shall be relieved of any further obligation to file monthly operating reports with the Bankruptcy Court. The Reorganized Debtor shall make all post-confirmation payments to the United States Trustee as may be required pursuant to 28 U.S.C. § 1930(a)(6) from available funds, and shall provide to the United States Trustee such financial reports as the United States Trustee may reasonably request, until such time as this Chapter 11 Case has been closed, converted, or dismissed.

9.08. **Retention of Claims and Interests**.  Post-petition, and pursuant to section 1123(b)(3)(B) of the Bankruptcy Code, any and all claims or interests belonging to the Debtor or to the Debtor's Estate shall be prosecuted and enforced by the Reorganized Debtor.  This includes, but is not limited to, any and all claims or causes of action for avoidance, recovery or subordination pursuant to sections 510, 544, 545, 547, 548, 549, 550, 551 and 553 of the Bankruptcy Code.

9.09.  **Setoffs**.  The Debtor may, but shall not be required to, set off against any Claim, and the payments or other distributions to be made pursuant to the Plan in respect of such Claim, claims of any nature whatsoever that the Debtor may have against the holder of such Claim; but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtor of any such claim that the Debtor may have against such holder. After the Effective Date, such right shall pass to the Reorganized Debtor.

**ARTICLE X**
**NOTICES**

10.01.  <u>General.</u>  After the Confirmation Date, all notices required to be given under any provision of the Bankruptcy Code and/or the Bankruptcy Rules shall be sent by first class mail, postage prepaid, only to (a) the Reorganized Debtor; (b) the counsel representing the Reorganized Debtor; (c) the United States in accordance with Bankruptcy Rule 2002(j), (d) the United States Trustee; and (e) those persons specifically requesting, pursuant to written request filed with the Court after the Confirmation Date, that they be furnished with notices. Service of all notices, as provided herein, shall constitute full and complete service on all Creditors and parties-in-interest.

**ARTICLE XI**
**MISCELLANEOUS**

11.01.  **Amendment or Modification to Plan.**  This Plan may be amended or modified by the Debtor prior to the hearing on confirmation without notice or hearing and without an additional Disclosure Statement pursuant to section 1127(a) of the Bankruptcy Code and, to the extent applicable, Bankruptcy Rule 3019. Post-confirmation amendments or modifications of the Plan may be allowed by the Court pursuant to section 1127(b) of the Bankruptcy Code if the proposed amendment or modification is offered before the Plan has been substantially consummated. The sole right to amend or modify the Plan at any time shall be reserved to the Debtor.  A holder of a Claim that has accepted this Plan shall be deemed to have accepted this Plan, as altered, amended or modified, if the proposed alteration, amendment or modification does not materially and adversely change the treatment of the Claim of such holder.

11.02.  **Correction of Plan**.  After the Effective Date, only the Debtor may, with the approval of the Bankruptcy Court, and so long as it does not materially or adversely affect the interest of Creditors, remedy any defect or omission, or reconcile any inconsistencies, in the Plan, or in the Confirmation Order in such manner as may be necessary to carry out the purposes and effect of the Plan.

11.03.  **Revocation of Plan**.  The Debtor reserves the right to revoke and withdraw this Plan prior to entry of the Confirmation Order. If the Debtor revokes or withdraws this Plan, or if confirmation of this Plan does not occur, then this Plan shall be deemed null and void, and nothing contained herein shall be deemed to constitute a waiver, an admission, or a release of any defenses or claims against the Debtor, its Estate, or any other person or to prejudice in any manner the rights, claims, or defenses of the Debtor in any further proceedings or litigation whatsoever, involving the Debtor, the Estate, and their respective successors or assigns, if any.

11.04. **Binding Effect**. The Plan shall be binding upon and inure to the benefit of the Debtor, the holders of Claims and Equity Interests, and their respective successors and assigns, including, without limitation, the Reorganized Debtor. The rights, benefits, and obligations of any entity named or referred to in this Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor, or assign of such entity.

11.05. **Notices** All notices, requests and demands to or upon the Reorganized Debtor to be effective shall be in writing and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, with a copy by mail, addressed as follows:

If to the Reorganized Debtor:      Mark H. Ralston
                                   Fishman Jackson Ronquillo PLLC
                                   Three Galleria Tower
                                   13155 Noel Road, Suite 700
                                   Dallas, TX 75240
                                   Telephone: (972) 419-5544
                                   Facsimile: (972) 4419-5500
                                   E-mail: mralston@fjrpllc.com

11.06. **Final Allowance**. Notwithstanding anything contained above, all distributions to Classes under this Plan will only be made after the creditors in said Classes have their Claims fully fixed and Allowed by the Court. However, objections on Claims in one Class will not preclude distribution to creditors in other Classes where no disputes exist regarding Claims in the other Classes.

11.07. **Consummation**. Upon completion of all payments and all transactions contemplated by this Plan, the Plan shall be deemed fully consummated, and this case shall be closed. Until substantial consummation occurs, the Debtor may move for and be granted modifications of this Plan. Once full consummation is accomplished, an appropriate Order will be entered closing this Chapter 11 Case, and such Order closing the case shall be deemed a final decree. The order closing this Estate shall, among other things, provide that all jurisdiction of this Court will terminate, except such jurisdiction as is otherwise provided hereinabove (including any disputes that may arise between the Reorganized Debtor and the Lender), or except and unless the Reorganized Debtor requires reopening of this case to enforce any injunctions contained in the Order closing this case (or any similar beneficial orders).

11.08. **Disbursing Agent**. The Reorganized Debtor shall act as disbursing agent under the Plan.

11.09. **Further Authorization**. The Debtor shall be entitled to seek such orders, judgments, injunctions, and rulings as it deems necessary to carry out the intentions and purposes, and to give full effect to the provisions, of this Plan.

11.10. **Means of Cash Payment**. Payments of Cash made pursuant to this Plan shall be made, at the option and sole discretion of the Debtor, by checks drawn on, or wire transfer from, a domestic bank selected by the Debtor.

11.11. **Plan Supplement.** All exhibits and documents included in the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan. All documents required to be filed with the Plan Supplement shall be filed with the Bankruptcy Court at least seven (7) days prior to the date of the commencement of the Confirmation Hearing. Thereafter, any Person may examine the Plan Supplement in the office of the Clerk of the Bankruptcy Court during normal court hours. Copies of the Plan Supplement may also be obtained without charge by contacting Morris Weiss at Waller Dortch & Davis, LLP at the address listed above.

11.12. **Severability of Plan Provisions**. If, prior to the Confirmation Date, any term or provision of this Plan is determined by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power, upon the request of the Debtor to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of this Plan shall remain in full force and effect and shall in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

11.13. **Governing Law**. Except to the extent that the Bankruptcy Code, the Bankruptcy Rules or other federal law is applicable, or to the extent that an exhibit or schedule to this Plan provides otherwise, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Texas without giving effect to the principles of conflicts of law of such jurisdiction.

11.14. **Conflicts.** In the event that provisions of the Disclosure Statement and provisions of this Plan conflict, the terms of this Plan shall govern.

11.15. **Entire Agreement**. Except as otherwise indicated, the Plan and the Plan Supplement supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

**REMAINDER OF PAGE INTENTIONALLY LEFT BLANK**

Dated:   May 4, 2020

WC 2101 BEN WHITE, LP,
Debtor

BY: WC BEN WHITE, LLC,
General Partner of the Debtor

_/s/ Natin Paul_
By:  Natin Paul
     Its:  President

[SIGNATURE PAGE]

## **<u>EXHIBIT B</u>**

## **FINANCIAL INFORMATION AND PROJECTIONS**

## **[TO BE PROVIDED]**

**EXHIBIT C**

**LIQUIDATION ANALYSIS**

**[TO BE PROVIDED]**